IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE NORTH RIVER INSURANCE COMPANY, | § § § | |
| Plaintiff Below, Appellant, | § § § | No. 8, 2014 |
| v. | § § § | Court Below: |
| MINE SAFETY APPLIANCES COMPANY, | § § § | Court of Chancery of the State of Delaware |
| Defendant Below, Appellee. | § § § | C.A. No. 8456-VCG |

Submitted: September 17, 2014
Decided: November 6, 2014
Revised: November 10, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices and **DAVIS**, Judge[*] constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **AFFIRMED.**

Peter B. Ladig, Esquire, Jason C. Jowers, Esquire, David J. Soldo, Esquire, Morris James LLP, Wilmington, Delaware for Appellant.

Of Counsel: Alan S. Miller, Esquire (*argued*), Bridget M. Gillespie, Esquire, Picadio Sneath Miller & Norton, P.C., Pittsburgh, Pennsylvania.

Brian C. Ralston, Esquire, Jennifer C. Wasson, Esquire, Michael B. Rush, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware for Appellee.

Of Counsel: Mark A. Packman, Esquire (*argued*), Gabriel Le Chevallier, Esquire, Jenna A. Hudson, Esquire, Katrina F. Johnson, Esquire, Gilbert LLP, Washington, D.C.

---

[*] Sitting by designation pursuant to Del. Const. Art. IV §12.

**VALIHURA**, Justice:

In this appeal, appellant North River Insurance Company ("North River") challenges the Court of Chancery's denial of its request for permanent injunctive relief. This multi-forum litigation concerns policies issued by North River to a safety products company, Mine Safety Appliances Company ("MSA"). North River issued thirteen policies to MSA covering periods from August 28, 1972 through April 1, 1986.[1] MSA is defending against thousands of personal injury claims allegedly caused by defects in its mine safety equipment. MSA seeks coverage under North River's policies as well as from several other insurers. The critical question of whether North River's coverage under these policies is "triggered" -- a matter of Pennsylvania law -- is being litigated, along with its claims against other insurers, in federal and state courts in Pennsylvania, the Delaware Superior Court and in certain later-filed cases in West Virginia.

North River requested that the Court of Chancery permanently enjoin MSA from prosecuting the later-filed claims in West Virginia and from assigning to any tort claimants the right to recover under any insurance policy issued by North River to MSA. During the course of this appeal, North River narrowed its focus to the assignment issue. For the reasons stated herein, we AFFIRM.

---

[1] North River policies provide coverage only for personal injuries occurring during the policy period. Thus, the coverage disputes are over the question of when the injury, sickness and/or disease is deemed to have occurred.

**FACTUAL AND PROCEDURAL BACKGROUND**

North River is a liability insurer incorporated in New Jersey. MSA, a Pennsylvania corporation, manufactures a variety of safety products including air-purifying respirators worn in various industrial environments. MSA and North River have been battling over the applicability of certain North River excess insurance policies in a number of jurisdictions including first in Pennsylvania, then in Delaware, and most recently in West Virginia. A summary of the litigations is helpful to our resolution of this appeal.

### A. *The Pennsylvania Actions*

#### i. *The Pennsylvania Federal Action*

On March 20, 2009, MSA sued North River for breach of contract in the United States District Court for the Western District of Pennsylvania (the "Pennsylvania Federal Action").[2] MSA sought a judgment that in accordance with Policy No. JU 1225, North River has a duty to both defend and indemnify MSA for thousands of asbestosis, silicosis and coal workers' pneumoconiosis ("CWP") claims filed against MSA.[3] Subsequently, North River filed a counterclaim seeking declaratory relief regarding the parties' rights and responsibilities under that policy.

---

[2] Compl., *Mine Safety Appliances Co. v. N. River Ins. Co.*, C.A. No. 2:05-MC-02025 (W.D. Pa. Mar. 20, 2009) (App. to Appellant's Opening Br. at A80).

[3] *State ex rel. N. River Ins. Co. v. Chafin*, 758 S.E.2d 109, 112 (W. Va. 2014) (App. to Appellee's Answering Br. at B95).

## ii. *The Pennsylvania State Actions*

On April 9, 2010, North River filed an action for declaratory relief against MSA and other insurers in the Court of Common Pleas of Allegheny County (the "Pennsylvania State Action,"[4] and collectively with the Pennsylvania Federal Action, the "Pennsylvania Actions"). In the Pennsylvania State Action, North River seeks a declaration of the parties' rights under three excess insurance policies -- namely, JU0830, JU0988, and JU1123 -- including whether the claims of MSA customers relate to injuries that were caused during the applicable effective dates of the policies. MSA filed an answer, counterclaim and cross-claims asserting that North River failed to honor the contract and acted in bad faith.

In November 2010, a federal judge authorized the use of a special discovery master to coordinate discovery in the Pennsylvania Actions. MSA conducted extensive discovery in the Pennsylvania Actions and filed cross-claims for summary judgment. At issue was the appropriate "trigger" for coverage. Oral argument was held on the motions on March 12, 2013.

## B. *The Delaware Superior Court Action*

On June 26, 2010, while the Pennsylvania Actions remained pending, MSA sued multiple insurers, including North River, in the Delaware Superior Court (the "Delaware Action") seeking a declaration that those insurers must defend and

---

[4] *See* Compl. Declaratory Relief, *N. River Ins. Co. v. Mine Safety Appliances Co.*, C.A. No. G.D. 10-7432 (Pa. Ct. Com. Pl. Apr. 9, 2010) (App. to Appellant's Opening Br. at A98).

indemnify MSA in accordance with various insurance policies -- some of which are at issue in the Pennsylvania Actions.[5] The policies at issue include Policy No. JU 1319, which is also at issue in the West Virginia litigation.[6]

On January 24, 2011, the Delaware Superior Court granted North River's motion to stay the proceedings as to all parties in favor of the pending Pennsylvania Actions.[7] Thereafter, several motions to lift the stay were filed.[8] Following a hearing held on March 22, 2013, the Delaware Superior Court lifted the stay as to those North River policies that were not implicated by the

---

[5] MSA seeks a declaration of the rights and obligations of 31 defendants concerning 125 insurance policies.

[6] *Id.* Specifically, the North River policies at issue in the Delaware action are: JU0010; JU 0139; JU 0157; JU 0158; JU 0171; JU 0653; JU 0830 (subject of the Pennsylvania State Action); JU 0988 (subject of the Pennsylvania State Action); JU 1123 (subject of the Pennsylvania State Action); JU 1225 (subject of the Pennsylvania Federal Action); JU 1319; 522-051840-9; and XS2526. App. to Appellant's Opening Br. at A289-90.

[7] *Mine Safety Appliances Co. v. AIU Ins. Co.*, 2011 WL 300252, at * 8 (Del. Super. Jan. 24, 2011), *interlocutory appeal refused*, 2011 WL 743050 (Del. Mar. 3, 2011).

[8] On September 16, 2011, MSA filed a motion to lift the stay in the Delaware Action for discovery purposes for all defendants other than North River and one other defendant. This motion was denied on October 11, 2011. On January 24, 2012, MSA filed a second motion seeking to lift the stay for discovery purposes as to all parties. On April 18, 2012, the Delaware Superior Court granted in part MSA's second lift-stay motion, permitting discovery to proceed as to all defendants except for the insurer parties in the Pennsylvania Actions, North River and one other party. *Mine Safety Appliances Co. v. AIU Ins. Co.*, C.A. No. N10C-07-241 (Del. Super. Apr. 18, 2012) (App. to Appellant's Opening Br. at A408-10). MSA then commenced discovery into the umbrella policy immediately underlying Policy JU 1319 and as to which several other insurer defendants are excess. *See* Mot. for Granting Comm'n, Notice Dep., *Mine Safety Appliances Co. v. AIU Ins. Co.*, C.A. No. N10C-07-241 (Del. Super. Oct. 24, 2012) (App. to Appellant's Opening Br. at A433-37, A440-52). On February 20, 2013, North River filed a motion to lift the stay as to all North River policies -- including JU 1319 -- except those at issue in the Pennsylvania Actions (JU 1225, JU 0830, JU 0988 and JU 1123). Mot. Lift Stay, *Mine Safety Appliances Co. v. AIU Ins. Co.*, C.A. No. N10C-07-241 (Del. Super. Feb. 20, 2013) (App. to Appellant's Opening Br. at A564-72).

4

Pennsylvania Actions, including Policy JU 1319, in order to allow North River to participate in depositions.[9] On November 26, 2013, MSA again moved to lift the stay as to North River. On February 25, 2014, the Delaware Superior Court approved a stipulated order lifting the stay as to North River with certain conditions, including prohibiting the parties from filing summary judgment motions on issues joined in the summary judgment motions in the Pennsylvania Actions. Argument was held on the parties' cross motions for summary judgment in the Pennsylvania Actions on March 12, 2013.

### C. The West Virginia Actions

Various actions have been filed by plaintiffs who reside in West Virginia (the "West Virginia Actions"). North River contends that these lawsuits were "engineered" by MSA as a result of MSA's disenchantment with certain of the Delaware Superior Court's rulings.[10] The West Virginia plaintiffs have availed themselves of West Virginia's Uniform Declaratory Judgments Act, which allows a personal injury plaintiff to bring a declaratory action against the tort defendant's insurer.[11] This statute permits such an action without the plaintiff first obtaining a

---

[9] Hr'g Tr. at 69-72, *Mine Safety Appliances Co. v. AUI Ins. Co.*, C.A. No. 10C-07-241 (Del. Super. Mar. 22, 2013) (App. to Appellant's Opening Br. at A663).

[10] Appellant's Opening Brief at 10 (stating that "MSA decided to make an end run around Judge Johnston's decisions" and "engineered a 'dispute' in a brand new jurisdiction -- West Virginia").

[11] *See* W. Va. Code § 55-13-1 (2008).

judgment or assignment from the tort defendant where that defendant has denied coverage.[12] Several actions were filed pursuant to this statute.

### i. *The Moore Action*

The first such action was filed on March 8, 2010, by Norman and Lisa Moore. The Moores sued MSA in the Circuit Court of Wyoming County, West Virginia (the "Circuit Court"), alleging that Norman Moore had developed CWP because of allegedly hidden defects and inadequate warnings provided with certain MSA respirators.[13] The Moores and MSA agreed to a confidential settlement in May 2012, which included an assignment of North River Policy JU 1319 and a release of MSA from liability. That settlement involved a combination of cash and an insurance assignment. On May 24, 2012, the Moores filed an amended and supplemental complaint seeking a declaration that North River must provide coverage under Policy JU 1319 and an order enforcing the settlement and requiring North River to pay plaintiffs the amount of proceeds assigned to them by MSA. Thereafter, on May 31, 2012, MSA asserted cross-claims against North River seeking a declaration that JU 1319 covers the Moores' claims. MSA also sought compensatory damages for the amounts it incurred in the settlement and in

---

[12] *Robinson v. Cabell Huntington Hosp., Inc.*, 498 S.E.2d 27 (W. Va. 1997) (finding injured plaintiff may bring declaratory judgment action against defendant's insurance carrier to determine if there is policy coverage before obtaining judgment against defendant in personal injury action where defendant's insurer has denied coverage); *Christian v. Sizemore*, 383 S.E.2d 810 (W. Va. 1989).

[13] *Moore v. Mine Safety Appliances Co.*, C.A. No. 10-C-35 (W. Va. Cir. Ct. Mar. 8, 2010).

6

defending the Moores' claims. After North River's motion to stay the action in favor of the Pennsylvania Actions was denied, North River settled with the Moores. The Circuit Court also denied North River's motion to dismiss or stay MSA's cross-claims. The parties subsequently agreed to stay the case.[14]

### ii. The Lambert Action

On April 19, 2010, Plaintiff Jill A. Lambert, individually and as administrator of the estate of her deceased husband, Carlos G. Lambert, filed a tort action against MSA and others in the Circuit Court.[15] She alleged that her husband developed CWP and died because the respirator manufactured and sold by MSA leaked substantial amounts of harmful coal dust and failed to protect him. Mr. Lambert worked as a coal miner in West Virginia from 1969 to 2002. He developed advanced lung disease and died at the age of fifty-nine following a double lung transplant.[16]

---

[14] The Vice Chancellor correctly observed that this action "would present the strongest case for injunctive relief" since both North River and MSA settled with the tort plaintiffs and were the only remaining parties in the case. *N. River Ins. Co. v. Mine Safety Appliances Co.*, 2013 WL 6713229, at *9 (Del. Ch. Dec. 20, 2013).

[15] Compl. Injunctive Relief at ¶ 34, *N. River Ins. Co. v. Mine Safety Appliances Co.*, C.A. No. 8456-VCG, 2013 WL 6713229 (Del. Ch. Apr. 4, 2013); *Chafin*, 758 S.E.2d at 111 (App. to Appellee's Answering Br. at B11, B92).

[16] *Chafin*, 758 S.E.2d at 111.

### iii. The Persinger Action

On April 14, 2011, Plaintiffs Eddie D. Persinger and Teresa Diane Persinger sued MSA and others in the Circuit Court and raised similar tort claims.[17] Mr. Persinger worked as a coal miner in West Virginia from 1972 to 2007. He developed CWP. Mrs. Persinger filed an amended and supplemental complaint after Mr. Persinger died due to complications from lung disease.[18]

### iv. The Confidential Settlements and Assignment of Rights

After years of litigation, and without admitting liability, MSA settled with Plaintiffs Lambert and Persinger.[19] Under confidential settlements, MSA paid the plaintiffs a sum certain and assigned them the right to recover the remainder of the settlement amount under an insurance policy that North River issued to MSA, Policy No. JU 1319.[20]

---

[17] *Id.*

[18] *Id.*

[19] App. to Appellant's Opening Br. at A520-27, A536-46.

[20] *Id.* MSA also expressly assigned to Persinger and Lambert "the causes of action, choses in action, and other rights to pursue and receive proceeds totaling the Assignment Amount that Mine Safety . . . would otherwise have under the Insurance Policy." Am. Compl. Declaratory J. & Enforce Settlement, Ex. B at 8, *Persinger v. Mine Safety Appliances Co.*, C.A. No. 11-C-45 (W. Va. Cir. Ct. Feb. 20, 2013); Am. Compl. Declaratory J. & Enforce Settlement, Ex. B at 8, *Lambert v. Mine Safety Appliances Co.*, C.A. No. 10-C-69 (W. Va. Cir. Ct. Feb 20, 2013) (App. to Appellant's Opening Br. at A526, A542). Policy No. JU 1319 is an excess insurance policy for the single year 1984-85 issued by North River to MSA. A fourth action was filed by Linda McVey (the "McVey Action") in August 2013. *See* First Amended and Supplemental Compl., *McVey v. Mine Safety Appliances Co.*, C.A. No. 10-C-70 (W. Va. Cir Ct. Aug. 20, 2013) (App. to Appellant's Opening Br. at A665-72). In this action, MSA assigned rights under Policy JU 1319 in a settlement of this action.

After settling with MSA, the West Virginia plaintiffs amended their complaints in February 2013 to add cross-claims against North River. These amended claims seek a declaratory judgment concerning North River's obligation to provide insurance coverage for MSA's liability to the tort plaintiffs and an order requiring North River to pay the remainder of the settlement amounts.[21] MSA then filed cross-claims against North River. In its cross-claims, MSA seeks a declaratory judgment regarding North River's obligation to pay for the plaintiffs' claims and damages for North River's alleged breach of the contract of insurance issued to MSA.[22] Oral argument was held on the parties' motions for summary judgment in March 2013.[23] North River filed a motion to dismiss, or, in the alternative, to stay the *Lambert* and *Persinger* actions until the coverage actions in Pennsylvania and Delaware are resolved.[24] The Circuit Court denied the motions to dismiss or stay in an order entered September 4, 2013.[25] In denying the motions, the Circuit Court stated that "the State of West Virginia has a strong

---

[21] The declaratory judgment sought was pursuant to West Virginia Code § 55-13-1 (2008).

[22] *Chafin*, 758 S.E.2d at 111 (App. to Appellee's Answering Brief at B94). At a status conference held in June 2013, the *Lambert* and *Persinger* actions were consolidated for pre-trial purposes and were set for back-to-back trials to commence in April 2014. *Id.*

[23] *Id.* at 112.

[24] *Id.*

[25] *Lambert v. Mine Safety Appliances Co.*, C.A. Nos. 11-C-69, 11-C-45 (W. Va. Cir. Ct. Sept. 4, 2013) (App. to Appellant's Opening Br. at A681-88).

interest in the cases and in seeing that its citizens (the plaintiffs) have access to the judicial system."[26]

### D. The Delaware Court of Chancery Action

Seeking some relief from the multiplicity of lawsuits, on April 4, 2013, North River filed a Verified Complaint in the Delaware Court of Chancery (the "Chancery Action").[27]  In the Chancery Action, North River sought a permanent injunction preventing MSA from prosecuting its later-filed claims in West Virginia as well as from assigning to any tort claimants rights to recover any portion of a settlement under any insurance policy issued by North River to MSA.  North River also sought to prevent MSA from assisting any tort claimants, absent a court order, in prosecuting claims against North River, and from prosecuting any claims for coverage under any North River policy, other than those actions pending in Pennsylvania and Delaware.  North River argued that, absent injunctive relief, it faces the irreparable harm of inconsistent judgments.

---

[26] *Id.* (App. to Appellant's Opening Br. at A683).

[27] In its Answer in the Chancery Action, MSA admitted that, "the trigger of coverage applicable to coal dust claims is already the subject of the Pa. Actions, is now the subject of cross motions for summary judgment in the Del. Actions, and is an issue of Pennsylvania substantive law." Answer at 15, *N. River Ins. Co. v. Mine Safety Appliances Co.*, C.A. No. 8456-VCG (Del. Ch. May 3, 2013) (App. to Appellant's Opening Br. at A26).

The following chart illustrates the policies at issue in the various actions:

| North River Policy | Start Date | End Date | Pennsylvania Actions | Delaware Superior Court Action | West Virginia Actions |
|---|---|---|---|---|---|
| JU 0010 | 3/30/1973 | 4/1/1976 | | X | |
| JU 0139 | 1/1/1976 | 4/1/1978 | | X | |
| JU 0157 | 4/1/1976 | 4/1/1979 | | X | |
| JU 0158 | 4/1/1976 | 4/1/1979 | | X | |
| JU 0171 | 4/1/1976 | 4/1/1979 | | X | |
| JU 0653 | 4/1/1979 | 4/1/1980 | | X | |
| JU 0830 | 4/1/1980 | 4/1/1981 | X | X | |
| JU 0988 | 4/1/1981 | 4/1/1982 | X | X | |
| JU 1123 | 4/1/1982 | 4/1/1983 | X | X | |
| JU 1225 | 41/1983 | 4/1/1984 | X | X | |
| JU 1319 | 4/1/1984 | 4/1/1985 | | X | X |
| 522 051840 9 | 4/1/1985 | 4/1/1986 | | X | |
| XS2526 | 8/28/1972 | 4/1/1976 | | X | |

The Court of Chancery heard argument on the parties' cross-motions on June 25, 2013. At argument, the Court stayed the case pending the Circuit Court's consideration of North River's motion to dismiss or stay the *Persinger* and *Lambert* actions. Following briefing and oral argument in the Chancery Action, as noted above, the Circuit Court denied North River's motion to dismiss or stay the *Persinger* and *Lambert* actions on September 4, 2013. At a status conference held on September 11, 2013, the Vice Chancellor requested supplemental memoranda on: (i) the effect of the West Virginia decision in *Christian v. Sizemore*[28] and (ii)

---

[28] 383 S.E.2d 810, 815 (W. Va. 1989) (finding there is "no particular procedural impediment in permitting the declaratory judgment claim with regard to the defendant's insurance coverage to be brought in the original personal injury suit rather than by way of a separate action"). The Vice Chancellor's focus was whether, under West Virginia law, tort plaintiffs have the right to sue an insurance carrier directly, without the participation of the insured, to determine coverage after agreeing to a settlement offer with the insured. North River argued that *Christian* only

the impact of the Circuit Court's denial of North River's motion to dismiss or stay the *Persinger* and *Lambert* actions. North River appealed the Circuit Court's decision to the West Virginia Supreme Court of Appeals on September 23, 2013, by filing a Verified Petition for a Writ of Prohibition.

### E. The Court of Chancery's Decision

In a Memorandum Opinion dated December 20, 2013, the Court of Chancery denied North River's request for permanent injunctive relief.[29] The Court of Chancery found that, assuming *arguendo,* North River had satisfied the first two prongs of the test for a permanent injunction -- *i.e.*, that it had shown both actual success on the merits and that it would suffer irreparable harm without the permanent injunction -- it had failed to satisfy the third prong by showing that the equities weighed in North River's favor.[30] The Court of Chancery reasoned that because it lacked jurisdiction over the tort plaintiffs in the pending West Virginia Actions, and because these plaintiffs may, under West Virginia law, continue to litigate the "trigger" issue in their declaratory judgment actions against North River, North River was seeking a remedy that inevitably would be ineffective at protecting it from the risk of inconsistent judgments. Specifically, the Court of

permitted a tort plaintiff to amend his or her complaint to add a declaratory judgment claim against the insurance carrier before obtaining judgment against the insured.

[29] *N. River Ins. Co. v. Mine Safety Appliances Co.*, 2013 WL 6713229 (Del. Ch. Dec. 20, 2013).

[30] *Id*. at *7 ("Even assuming that North River has been successful with respect to factors (1) and (2), for the reasons below, the equities do not support the relief requested.").

Chancery held that "[b]ecause North River has asked this Court for a remedy that will not achieve its desired results, and because '[e]quity will not do a useless thing,' North River has failed to demonstrate its entitlement to injunctive relief."[31] The Court further concluded that "it would be inequitable for this Court to grant such an injunction, which would result in North River continuing to litigate these issues that will define MSA's rights as an insured, without MSA being able to vigorously defend itself."[32]  The Court, accordingly, found that North River had not demonstrated its entitlement to injunctive relief.

Although the primary focus on the proceedings below had been North River's attempt to enjoin MSA from litigating the West Virginia Actions, the Court of Chancery articulated several reasons for refusing to enjoin MSA's ability to assign its rights under the policies issued by North River:

> As I have already noted, under West Virginia's Declaratory Judgment Act, a personal injury plaintiff may bring a declaratory action against the defendant's insurer where that insurer has denied coverage, even if the plaintiff has not yet obtained a judgment against the tort defendant.  I therefore cannot shield North River from the risk of inconsistent judgments by granting the requested forms of injunctive relief. Even if MSA were prevented, by this Court, from assisting litigants, prosecuting its claims against North River, or assigning its rights under North River's insurance policies in other jurisdictions, North River would still face the risk of inconsistent judgments, as personal injury tort plaintiffs in at

---

[31] *Id.* at *1 (citing *Walker v. Lamb*, 259 A.2d 663, 663 (Del. 1969)).

[32] *N. River Ins. Co. v. Mine Safety Appliances Co.*, 2013 WL 6713 229, at *9.

13

least West Virginia may seek declaratory relief against North River directly, without an assignment from or judgment against MSA. Further, as I have found above, it would be inequitable for this Court to grant such an injunction, which would result in North River continuing to litigate against certain tort plaintiffs about MSA's rights as an insured party, without MSA being able to defend itself. Moreover, an injunction preventing MSA from assigning any rights under the policies to its tort victims would hamper MSA's ability to settle claims, without providing relief from the possibility of inconsistent judgments.[33]

On January 7, 2014, North River filed a timely Notice of Appeal and an Amended Notice of Appeal to this Court.

### F. The West Virginia Supreme Court's Decision

On March 27, 2014, after North River filed its Opening Brief in this appeal, the Supreme Court of Appeals of West Virginia (the "Supreme Court of Appeals") denied North River's petition for a writ of prohibition to stay the pending West Virginia Actions.[34] In so doing, the highest court in West Virginia addressed several of the key points of West Virginia law that had formed the framework upon which the Vice Chancellor based his findings.

In affirming the Circuit Court's ruling, the Supreme Court of Appeals found no error in denying North River's motion to dismiss, which was premised upon the doctrine of forum *non-conveniens*. In rejecting the argument that the *Lambert* and *Persinger* trials would be oppressive or unfair to North River, the Supreme Court

---

[33] *Id.*

[34] *Chafin*, 758 S.E.2d at 110.

14

of Appeals observed that the West Virginia plaintiffs' choice of forum is entitled to great deference.[35] It rejected North River's argument that this deference should be diminished because the plaintiffs accepted an assignment of MSA's rights under the insurance contract.[36] In this regard, the Supreme Court of Appeals stated:

> North River asserts the plaintiffs 'step in the shoes' of MSA and therefore this action is really nothing more than a coverage claim between MSA and North River. We find this argument is wholly without merit. *See generally* Sy 1. Pt. 3 *Christian v. Sizemore*, 181 W. Va. 628, 383 S.E. 2d 810 (1989) ("An injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has denied coverage.") and *Price v. Messer*, 872 F. Supp. 317, 321 (S.D. W. Va 1995) ("West Virginia law unequivocally holds insurance/collection claims are properly joined in the same action with negligence claims, whether the joinder is effected prior to the tort judgment . . . or after [.]") (Citations omitted). Therefore, we find no reason to diminish the preference given to the plaintiffs' choice of forum.[37]

North River had argued that a stay of the West Virginia proceedings was essential "because MSA committed a 'sham upon the court' by assigning a portion of its rights under the policy to plaintiffs."[38] But the West Virginia plaintiffs maintained that "they entered into the settlement agreements that included insurance assignments because they wanted to realize some recovery on their

---

[35] *Id*. at 115 (App. to Appellee's Answering Br. at B102).

[36] *Id*.

[37] *Id*. (citations omitted in original).

[38] *Id*. at 116.

claims that have been pending for years," and that they "fully recognize North River has denied coverage to MSA."[39] Although the Supreme Court of Appeals acknowledged North River's protests that MSA should not be allowed to create "mini-coverage claims" in each tort case it settles,[40] it pointed to other factors that weighed against dismissal. A principal factor was its conclusion that "West Virginia law specifically provides that the plaintiff can bring a declaratory judgment suit against the insurer of a tortfeasor in an ongoing tort action."[41]

The Supreme Court of Appeals then expressly rejected North River's argument that an alternative forum exists, namely, the Delaware Superior Court. Specifically, it rejected North River's argument that the Delaware Superior Court could exercise jurisdiction over the West Virginia plaintiffs because these plaintiffs had accepted an assignment of insurance rights from MSA.[42] In so holding, the Supreme Court of Appeals stated the "Delaware court lacks personal jurisdiction over the plaintiffs, cannot determine whether the settlement agreements are enforceable, and has not been presented with the affirmative defenses asserted by North River."[43] The Supreme Court of Appeals affirmed the Circuit Court's denial

---

[39] *Id.* at 117.

[40] *Id.* at 115 (stating that, "[a]lthough we agree that this is a valid point made with regard to MSA, we cannot agree that this factor strongly favors dismissal of these actions.").

[41] *Id.*

[42] *Id.*

[43] *Id.* at 116.

of the stay, finding that "the out-of-state courts will not address the relief sought by plaintiffs."[44] Further, it held that it would be "unfair and prejudicial to the plaintiffs to delay the trials unnecessarily," and that, "[a]s West Virginia citizens, the plaintiffs enjoy the constitutional right to a just and speedy determination in these civil proceedings."[45]

## DISCUSSION

North River initially raised two issues on appeal. First, North River asserted that the Court of Chancery committed reversible error by refusing a permanent injunction barring MSA from prosecuting the West Virginia Actions. Second, North River asserted that the Court of Chancery erred in refusing to issue a permanent injunction barring MSA from prospectively assigning to additional tort plaintiffs MSA's rights under insurance policies issued by North River.

Following the March 27, 2014, Supreme Court of Appeals decision, North River withdrew the first argument raised on appeal, *i.e.*, that the Court of Chancery had erred in refusing to enjoin MSA from continuing to litigate the West Virginia Actions.[46] But North River continues to press its argument as to MSA's ability to assign its rights under policies issued by North River.

---

[44] *Id*. at 117.

[45] *Id*.

[46] *See* Appellant's Reply Br. at 1.

### A. *Appellant North River's Contentions on Appeal*

North River contends that the Court of Chancery committed three reversible errors relating to the balancing of the equities portion of the three-pronged test for permanent relief.[47]  First, North River argues that the Court of Chancery impermissibly assumed that just because the underlying tort claimants *could* bring direct suits against North River to determine coverage under the policies issued to MSA, that such claimants *would* do so.  North River contends that such "unsupported speculation" amounts to reversible error.

Second, North River claims that the Court of Chancery erred as matter of law when it determined that an injunction that does not completely eliminate irreparable harm is *useless*.  In support of this contention, North River argues that the Court of Chancery erred by focusing on preventing or eliminating entirely the risk of inconsistent judgments, and not focusing on the Court of Chancery's ability to fashion relief that would at least *reduce* the potential harm.  North River argues that if MSA were enjoined from assigning its rights to underlying tort plaintiffs, such an injunction would slow or reduce the only danger it faces at the moment, namely, MSA's alleged encouragement of litigation in contravention of the Delaware and Pennsylvania courts' jurisdiction.

---

[47] To succeed in a request for a permanent injunction, a party must show (i) actual success on the merits; (ii) that it would suffer irreparable harm if the injunction is not granted; and (iii) that the balance of the equities favors it.  *See Christiana Town Ctr., LLC v. New Castle County*, 2003 WL 21314499, at *2 (Del. Ch. June 6, 2003), *aff'd*, 2004 WL 77868 (Del. Jan. 16, 2004).

Finally, North River argues that there are no facts in the record that support the Court of Chancery's conclusion that MSA would be hampered in its ability to settle claims if it were enjoined from assigning its rights. North River argues that the record evidence shows that MSA has settled over 450 cases *without* assigning its rights, which North River contends demonstrates that MSA is using the assignment strategy as an "end-run" around the Delaware Superior Court's jurisdiction.

## B. *Appellee MSA's Contentions on Appeal*

MSA counters that the mere possibility that claimants could bring actions in West Virginia was enough to shift the equities in its favor, especially given the Court of Chancery's conclusion that the injunction would not eliminate all risk of inconsistent judgments. MSA emphasizes that where an injunction does not completely remedy the harm, the injunction is useless, and should not be granted, and that Delaware precedent allowing partially-effective injunctions is distinguishable. MSA argues further that MSA's rights, both contractual and otherwise, would be infringed, and its ability to settle cases seriously hampered, if the Court were to keep it from assigning to tort plaintiffs its rights under the policies issued by North River.

*C. Our Standard of Review*

The parties disagree as to the standard of review this Court should apply in reviewing the decision below.

MSA argues that we should review the Court of Chancery's decision under an abuse of discretion standard. On the other hand, while North River concedes that the Court generally reviews the granting or denial of injunctive relief for abuse of discretion, it urges that our review here should be *de novo*. North River's principal argument that our review should be *de novo* rests on the premise that the Vice Chancellor's rulings contain "embedded questions of law."

Although we generally review a denial of a permanent injunction for an abuse of discretion,[48] we do not defer to the trial court on embedded legal conclusions and review them *de novo*.[49] Here, the embedded legal questions are questions of West Virginia law. This Court has previously held that

---

[48] *Pomilio v. Caserta*, 215 A.2d 924, 925 (Del. 1965) ("The granting or refusal of final injunctive relief rests within the sound judicial discretion of the trial court. On appeal from a denial of injunctive relief, our inquiry is whether the trial court clearly abused its discretion.").

[49] *Lawson v. Meconi*, 897 A.2d 740, 743 (Del. 2006). ("Mrs. Lawson challenges the Court of Chancery's legal conclusions concerning the interpretation of several Delaware statutes and the scope of the common law right to privacy in Delaware. Accordingly, the applicable standard of appellate review is *de novo*."). *See also SI Mgmt. L.P. v. Wininger*, 707 A.2d 37, 40 (Del. 1998) (reviewing the Court of Chancery's findings of fact for abuse of discretion, but its determinations on legal principles *de novo*); *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 394 (Del. 1996) ("[T]his Court reviews the grant of a preliminary injunction without deference to the embedded legal conclusions of the trial court.").

20

determinations of foreign law "are treated as rulings on a question of law and are subject to *de novo* review."[50]

The Court of Chancery based the part of its ruling regarding the utility of an injunction on its interpretation of West Virginia's Uniform Declaratory Judgments Act[51] and relevant West Virginia case law (particularly *Christian v. Sizemore*[52] and *Price v. Messer*[53]). On appeal, North River contends that the Court of Chancery erred in its reading of West Virginia law. Specifically, North River contends that the West Virginia law permitting tort plaintiffs to bring a declaratory judgment action directly against the carrier was inapplicable here because the tort plaintiffs settled with and released MSA and then received an assignment of rights under the policy issued by North River to MSA. North River argued that after the release and assignment, the tort plaintiff is no longer a stranger to the policy, but has stepped into the policyholder's shoes.

But during the pendency of this appeal, West Virginia's highest court rejected North River's contentions and allowed the West Virginia Actions to

---

[50] *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1, 30 (Del. 2005). *See also Deuley v. DynCorp Int'l., Inc.*, 8 A.3d 1156, 1160 (Del. 2010); *J.S. Alberici Constr. Co. v. Mid-West Conveyor Co.*, 750 A. 2d 518, 520 n.2 (Del. 2000); *Shook & Fletcher Asbestos Settlement Trust v. Safety Nat'l Cas. Corp.*, 909 A.2d 125, 128 (Del. 2006). In *Shook & Fletcher*, the issue on appeal was whether the Superior Court erred in its determination of which liability rule was appropriate under Alabama law. *Id.* The Court determined that because its review was "purely one of law," albeit Alabama law, *de novo* review was appropriate. *Id.*

[51] W. VA. CODE § 55-13-1 (2014).

[52] 383 S.E.2d 810 (W.Va. 1989).

[53] 872 F. Supp. 317 (S.D.W.Va. 1995).

proceed against North River. As a result, North River is no longer pressing its arguments regarding the points of West Virginia law it raised below. Thus, while our review of embedded conclusions of law normally would be subject to *de novo* review, here, we defer to our sister court's interpretation of West Virginia law. It follows that our primary focus in this appeal now rests on the Court of Chancery's balancing of the equities and on its findings and conclusions, which are primarily factual in nature.

In this regard, North River did appropriately concede at oral argument that the issue of whether an injunction would impede MSA's ability to settle claims presented factual issues subject to an abuse of discretion standard of review. Where the support in the record is sufficient for a factual finding, even if there can be a reasonable difference of view, our standard of review compels us to defer to the trial court. Our function here is not to substitute our judgment for the trial court's as though we had before us an original application.[54] Instead, where the

---

[54] *See Ivanhoe P'rs v. Newmont Mining Corp.*, 535 A.2d 1334, 1341 (Del. 1987) (citing *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972)) ("[W]e do not ignore the findings of the trial judge. If they are sufficiently supported by the record and are the product of an orderly and logical deductive process, in the exercise of judicial restraint we accept them, even though independently we might have reached opposite conclusions."); *Chavin v. Cope*, 243 A.2d 694, 695 (Del. 1968) ("When an act of judicial discretion is under review, the reviewing court may not substitute its own notion of what is right for those of the trial judge, if his judgment was based on conscience and reason, as opposed to capriciousness or arbitrariness.").

record below demonstrates the judgment reached was directed by conscience and reason, as opposed to capricious or arbitrary action, we will affirm.[55]

Finally, while the question of whether an injunction must completely remedy the alleged harm, *e.g.*, whether it would be *useless* if it does not completely remedy the harm, is an embedded legal issue over which we exercise *de novo* review, the overall balancing of the equities presented here is subject to an abuse of discretion standard.[56]

### D. The "Speculative Nature of Direct Claims" Argument

We deal first with North River's claim that the Court of Chancery erred in concluding that tort claimants would assert claims against North River absent an assignment to them of MSA's rights under the insurance policies. While North River asserts that "not a single tort plaintiff has sought to bring an independent

---

[55] *See Pitts v. White*, 109 A.2d 786, 788 (Del. 1954) ("The essence of judicial discretion is the exercise of judgment directed by conscience and reason, as opposed to capricious or arbitrary action; and where a court has not exceeded the bounds of reason in view of the circumstances, and has not so ignored recognized rules of law or practice, so as to produce injustice, its legal discretion has not been abused; for the question is not whether the reviewing court agrees with the court below, but rather whether it believes that the judicial mind in view of the relevant rules of law and upon due consideration of the facts of the case could reasonably have reached the conclusion of which complaint is made.").

[56] *See, e.g.*, *Cherry Hill Const., Inc., v. James Julian, Inc.*, 1991 WL 316969, at *3 (Del. Dec. 11, 1991) (finding no abuse of discretion where the issue concerning a permanent injunction was a matter within judicial discretion); *see also* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate & Commercial Practice in the Delaware Court of Chancery* § 12-2[f], at 12-35 (Matthew Bender & Co., 2013) (citations omitted); *Cirrus Hldg. Co. v. Cirrus Indus., Inc.*, 794 A.2d 1191, 1211 (Del. Ch. 2001) ("[t]he decision to grant or deny a preliminary injunction rests in the court's sound discretion."). North River agrees that the issue of the utility of injunctive relief was intertwined with the embedded questions of West Virginia law. *See* Appellant's Reply Br. at 5. As noted above, we are not re-examining these points given our sister court's rulings.

declaratory judgment action against North River," it cites to nothing in the record that would suggest that this behavior is necessarily predictive of the future.[57] The burden below rested with North River. Part of North River's challenge in this appeal has been that its focus has understandably shifted to the assignment issue in mid-stream due to developments in the West Virginia courts. The standard for permanent injunction relief is onerous and North River's attempt to show that the Court of Chancery abused its discretion in denying that relief is a tall order under any circumstances, let alone without a full evidentiary record.

As a preliminary matter, MSA has questioned whether the "speculative nature of the harm" issue was fairly presented to the Court of Chancery, as required by Delaware Supreme Court Rule 8.[58] "We adhere to the well-settled rule that a party may not attack a judgment on a theory he failed to advance before the trial judge."[59] Although North River primarily focused in the proceedings below on seeking to enjoin the West Virginia Actions, it did point out that MSA had settled "hundreds" of cases without assigning its rights, and that the first assignment occurred after the Delaware Superior Court kept the stay in effect as to

---

[57] Appellant's Opening Br. at 26-27.

[58] Supr. Ct. R. 8. Appellee's Opening Br. at 14, 22 ("North River *never* contended in the proceedings below that tort plaintiffs would not sue independent of MSA, even though MSA argued in court that the tort plaintiffs' actions would go forward regardless of whether an injunction was issued.").

[59] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 678 (Del. 2013) (internal citations omitted).

North River in March 2012.[60]  We are satisfied that the broader issue of the utility of future assignments was sufficiently raised in the Court of Chancery during the June 25, 2013, oral argument on the parties' Cross Motions for Judgment on the Pleadings.[61]  Accordingly, Rule 8 does not bar our consideration of North River's argument on this point.

But the dearth of evidence supporting North River's contention that claimants would not sue North River absent an MSA assignment of rights -- admittedly a difficult proposition to support -- compels us to conclude that under our deferential standard of review, the Court of Chancery did not err in finding that there is a legitimate risk that tort claimants might proceed directly against North River independent of any assignment of rights by MSA.  We balance the weak evidentiary record on these points against the strong public policy statements by the West Virginia courts that the tort claimants in West Virginia should be able to litigate these issues in West Virginia.  These policy concerns must now be viewed in the prism of the highest West Virginia state court's ruling upholding the right of

---

[60] Appellant's Reply Br. at 3, *N. River Ins. Co. v. Mine Safety Appliances Co.*, No. 8-2014 (Del. May 2, 2014); Tr. of Oral Argument at 27-28*, N. River Ins. Co. v. Mine Safety Appliances Co.*, C.A. No. 8456-VCG, 2013 WL 6713229 (Del. Ch. Dec. 20, 2013); App. to Appellant's Reply Br. at AR 3-4.  MSA's complaints in the Pennsylvania Actions, included in the record before us, show that MSA seeks reimbursement for over $20 million paid in settlement of claims brought by approximately 400 claimants.  *See* App. to Appellant's Opening Br. at A80-93.  North River states that there were no assignments of rights in these cases.

[61] *See* Tr. of Oral Argument at 25, 28-29, 50-52, *N. River Ins. Co. v. Mine Safety Appliances Co.*, C.A. No. 8456-VCG, 2013 WL 6713229 (Del. Ch. Dec. 20, 2013).

West Virginia tort claimants to proceed directly against North River over North River's repeated objections.

Lacking a firm evidentiary basis for its first claim of error, North River employs reasoning and logic to suggest that enjoining MSA's ability to assign its rights would likely stop, or at least seriously reduce, lawsuits from being filed against it by tort claimants. At oral argument, both North River and MSA maintained that absent an assignment, the most the West Virginia tort claimants could obtain from North River in the West Virginia Actions is declaratory relief -- as opposed to money damages. Thus, absent an assignment, the tort claimants would have to litigate on their own (and at their own expense) against North River. Accordingly, North River reasons that if the tort claimants had to undertake the burden and expense of litigating the declaratory judgment claims without MSA's involvement, and then, if successful, pursue North River for money damages, the flow of such claims would be reduced to a trickle. Although North River's arguments are logical and perhaps even compelling, they lack a sufficient evidentiary foundation in the record before us.[62] Accordingly, North River has not

---

[62] For example, when asked what the utility of an injunction would be given that the West Virginia courts could issue rulings in the pending West Virginia Actions (which North River no longer seeks to enjoin), North River responded that an injunction against future MSA assignments could potentially have an effect with respect to the other twelve policies at issue in Delaware. North River also suggested that an injunction preventing further assignments might be useful in Kentucky where there is no independent right allowing tort claimants to sue insurers directly. Yet, the record on these points is not sufficiently developed to affect our analysis.

demonstrated that the Court of Chancery abused its discretion in concluding that North River faces the risk of inconsistent judgments and that an injunction would not shield North River from that risk.

### E. The "Complete Relief" Argument

Turning to the merits of North River's second argument -- that the Court of Chancery erred in denying permanent injunctive relief because it would be futile or "useless" -- North River relies heavily upon the Court of Chancery's decision in *In re Del Monte Foods Co. Shareholders Litigation*.[63] In that case, the Court of Chancery granted plaintiffs' request for a preliminary injunction even though it found that the requested injunction "[did] not perfectly remedy the harm . . . caused, but it does go part of the way."[64] North River argues, accordingly, that a remedy need not be completely efficacious in counteracting harm in order to avoid being deemed "useless." According to North River, the Court of Chancery's determination that an injunction against MSA's prospective assignment to tort claimants of its rights under the insurance policies was useless constituted reversible error because it overlooked the benefits to be derived from such an injunction -- *i.e.*, that MSA's alleged "gamesmanship" in attempting to subvert the jurisdiction of the Delaware Superior Court would be *reduced*.

---

[63] *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813 (Del. Ch. 2011).
[64] *Id.* at 839.

First, the Court of Chancery observed that a permanent injunction is an extraordinary form of relief. The standards for permanent injunctive relief are well-known and are more rigorous than the standard for preliminary injunctive relief as applied in *Del Monte*.[65] When a plaintiff seeks a permanent rather than preliminary injunction, he must demonstrate "actual, rather than probable success on the merits."[66]

Second, the Vice Chancellor was correct that, generally, equity will not do a "useless thing." For example, in *Walker v. Lamb*, this Court found that the Court of Chancery properly dismissed an action for a mandatory injunction where petitioner sought the return of photographs taken of and fingerprints taken from the petitioner during a criminal investigation.[67] This Court found that the issue was "academic because the appellant has been indicted and the State unquestionably may take the fingerprint record and photographs anew."[68] Because the remedy

---

[65] To establish entitlement to permanent injunctive relief, a plaintiff must demonstrate: "(i) actual success on the merits; (ii) irreparable harm will be suffered if injunctive relief is not granted; and (iii) the harm that will result from a failure to enjoin the actions that threaten plaintiff outweighs the harm that will befall the defendant if an injunction is granted. *Sierra Club v. Del. Dept. of Nat'l Res. & Envtl. Control*, 2006 WL 1716913, at *3 (Del. Ch. Jun. 19, 2006) (citing *Korn v. New Castle County*, 2005 WL 2266590, at * 14 (Del. Ch. Sept. 27, 2005)), *aff'd*, 919 A.2d 547 (Del. 2007).

[66] *Draper Comm'ns, Inc. v. Del. Valley Broadcasters Ltd. P'ship*, 505 A.2d 1283, 1288 (Del. Ch. 1985); *Quest Commc'ns Int'l Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 821 A.2d 323, 237-28 (Del. Ch. 2002); *Copi of Del., Inc. v. Kelly*, 1996 WL 633302, at *4-5 (Del. Ch. Oct. 25, 1996) (requiring actual success on the merits), *aff'd sub nom. Smart Bus. Sys., Inc. v. Copi of Del. Inc.*, 1998 WL 112523 (Del. Jan. 23, 1998).

[67] *Walker v. Lamb*, 259 A.2d 663, 663 (Del. 1969) *aff'g* 254 A.2d 265 (Del. Ch. 1969).

[68] *Id.*

sought would be useless, and because "[e]quity will not do a useless thing," this Court affirmed the judgment of the Court of Chancery.[69]

Also illustrative of this principle is *New Castle County v. Peterson*.[70] In that case, New Castle County and its County Executive filed an action in the Court of Chancery seeking an injunction compelling the County Council to meet and adopt an operating budget on or before July 1, 1987.[71] Because the Council could not "be judicially coerced to agree upon a particular budget," and because there was no guarantee that the County Executive would approve a budget to which the Council had agreed, the Court of Chancery denied the request for injunctive relief, stating that "[a]n injunction should not be granted where it would be ineffective to achieve its desire result."[72]

Here, the Court of Chancery correctly determined that, under West Virginia law, tort plaintiffs have the right, independent of any assignment, to bring a declaratory judgment suit against North River.[73] Much like in *Walker* and *Peterson*, the Court of Chancery could not, via an injunction, completely remedy the harm sought to be avoided -- namely, the risk of inconsistent judgments in the

---

[69] *Id.*

[70] *New Castle County v. Peterson*, 1987 WL 13099 (Del. Ch. Jun. 30, 1987).

[71] *Id.* at *1.

[72] *Id.* at *3.

[73] *N. River Ins. Co. v. Mine Safety Appliances Co.*, 2013 WL 6713229 (Del. Ch. Dec. 20, 2013).

Delaware and West Virginia Actions. As in *Peterson*, where the court could not force the New Castle County Council to vote on and adopt a budget, the Court of Chancery could not prevent the underlying West Virginia tort claimants from bringing claims against North River in West Virginia.

North River is correct that there is no *per se* requirement that an injunction must provide complete relief. But although we might have ruled differently under a less deferential standard of review, and with the benefit of a more robust record on certain issues raised later in the proceedings,[74] we decline to find that the Court of Chancery abused its discretion in balancing the overall equities and in denying North River's request for the extraordinary remedy of permanent injunctive relief.

This is a close case, as we believe that there is some merit to North River's contention that MSA has acted inequitably. MSA initiated litigation in three different forums: Pennsylvania, Delaware and West Virginia. It filed the Delaware Action after initiating litigation in Pennsylvania. Apparently not satisfied with the Delaware Superior Court's deference to the Pennsylvania courts on the key substantive issues, MSA involved a third forum -- West Virginia. The issues raised in MSA's cross-claims in West Virginia are the same issues that are

_____

[74] At oral argument, North River explained aspects of MSA's conduct, including details regarding its settlements reached in the West Virginia tort litigations, in a way that it did not do so below. The Court of Chancery thus did not have a fair opportunity to consider these claims. Because certain arguments were not fairly presented below, they do not form a proper basis to find fault with the Court of Chancery, which carefully addressed the record that was presented to it.

30

governed by Pennsylvania law and that are the subject of the Pennsylvania Actions. The pendency of the Pennsylvania Actions was the basis for the Delaware court's initial decision to stay the Delaware Action. Indeed, at oral argument, MSA's counsel even stated that if the West Virginia court ruled in its favor before any decision by the Pennsylvania courts, it would likely seek to use the West Virginia judgment offensively in the Pennsylvania Actions.

Thus, MSA's invocation of multiple state and federal courts in its attempt to resolve its coverage issues is not conduct this Court wishes to sanction. Initiating multiple actions in different fora inevitably results in duplication of effort and the compounding of litigation expenses -- not to mention the inefficient use of judicial resources. The inefficiencies inherent in multi-forum litigation have been the subject of much discussion by courts and commentators, most notably in the context of litigation challenging corporate transactions.[75] As in the corporate

---

[75] In the corporate context, for example, much of the discussion has centered on ways in which corporations have responded to multi-forum litigation, such as the adoption of forum-relation charter or bylaw provisions. *See, e.g.*, *City of Providence v. First Citizens BancShares, Inc.*, 99 A.3d 229, 239 (Del. Ch. 2014) ("The whole point of adopting the Forum Selection Bylaw was to solve the issue of multi-forum litigation such that this Court (and courts in other jurisdictions) would not need to divine the appropriate forum."); *Boilermakers Local 154 Ret. Fund v. Chevrin Corp.*, 73 A.3d 934, 944 (Del. Ch. 2013) (noting that over 250 publicly traded corporations have adopted forum selection bylaws); E. Micheletti & J. Parker, *Multi-Jurisdictional Litigation: Who Caused This Problem, and Can It Be Fixed?* 37 Del. J. Corp. L., 1 (2012); Frederick H. Alexander & Daniel D. Matthews, *The Multi-Jurisdictional Stockholder Litigation problem and the Forum Selection Solution*, 26 Corp. Couns. Wkly. 19 (May 11, 2011); Joseph Grundfest & Kristen Amy Savelle, *The Brouhaha Over Intra-Corporate Forum Selection Provisions: A Legal, Economic, and Political Analysis*, 68 Bus. Law. 235 (2013); Mark Lebovitch, Jerry Silk, & Jeremy Friedman, *Making Order Out of Chaos: A Proposal to Improve Organizations and*

31

transactional context, the inefficiencies and potential waste of judicial resources is similarly present here. Further, MSA could hardly complain if, as a result of an injunction, it were forced to litigate the coverage issues in one of its two earlier-chosen fora.[76]

But the inefficiencies caused by MSA's multiple filings in various courts do not mean that under the peculiar facts of this case the balance of equities automatically tips against MSA -- especially where important principles of comity are at stake and where the parties in the various proceedings are not "mirror images" of each other.[77]

Sensitive to the principles of comity at stake here, the Court of Chancery was correct in being cautious about exercising its injunctive powers. The West

---

*Coordination in Multi-Jurisdictional Merger-Related Litigation* (Dec. 1, 2011), available at http://www.blbglaw.com/misc_files/MakingOrderoutofChaos.

[76] This observation is supported, for example, by the cases holding that a party would not suffer harm by being forced to litigate according to a forum selection provision to which it voluntarily agreed. *See, e.g.*, *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Gp.*, 2012 WL 4847089, at *11 (Del. Ch. Oct. 11, 2012) (noting that "[t]here is nothing unreasonable about enforcing the forum selection clause against [the resisting party], because any harm it has suffered is entirely self-inflicted"), *aff'd*, 67 A.3d 373 (Del. 2013).

[77] North River's own conduct may have contributed to a perception that it would not be irreparably harmed by continued prosecution of cases in Delaware and West Virginia. For example, North River asked the Superior Court to lift the stay partially for Policy JU 1319 to participate in certain proceedings, and it appears to have agreed to various schedules for litigating the West Virginia Actions. *See, e.g.*, *Lambert v. Mine Safety Appliances Co.*, C.A. No. 10-C-69, 11-C-45 (W. Va. Cir. Ct. Sept. 4, 2013) (the Circuit Court, in denying North River's motions to dismiss and/or stay stated that, "North River agreed to the case management order and trial dates and will not suffer a substantial injustice in having to litigate the cases."). However, the horse may have been out of the barn as to the West Virginia Actions, particularly after denial of three motions to dismiss and/or stay these actions. North River understandably no longer seeks injunctive relief as to them.

Virginia courts repeatedly articulated in their related proceedings the important public policies that impact its citizens. For example, in its decision denying North River's motion to dismiss or stay, the Circuit Court stated that "the State of West Virginia has a strong interest in seeing the cases handled here because the plaintiffs are West Virginia citizens, the underlying injuries and deaths occurred in West Virginia, and the controversies arose in West Virginia."[78] The Supreme Court of Appeals echoed these concerns.[79]

In addition to notions of fairness and comity, Delaware courts consider other factors in deciding whether to exercise discretion to enjoin the prosecution of litigation in another forum.[80] Generally, Delaware courts will not enjoin parties from prosecuting litigation in another jurisdiction unless the court can exercise personal jurisdiction over all of the parties having an interest in the controversy.[81] The West Virginia courts determined -- and North River conceded during the proceedings below -- that the Delaware Superior Court has no jurisdiction over the

---

[78] *Lambert v. Mine Safety Appliances Co.*, C.A. No. 10-C-69, 11-C-45 (W. Va. Cir. Ct. Sept. 4, 2013) (App. to Appellant's Opening Br. at A686).

[79] We take comfort in the fact that the West Virginia courts share our sensitivity to the risk of potentially inconsistent rulings. For example, the Supreme Court of Appeals stated that "the [West Virginia] circuit court acknowledged these [out-of-state] rulings may impact the rights of the [West Virginia] plaintiffs and stated that it would give whatever deference is due while handling this litigation." *Chafin*, 758 S.E.2d at 117.

[80] *See* Wolfe & Pittenger, *supra* note 56, § 5.03, at 5-54.

[81] *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 634 (Del. Ch. 1968).

West Virginia tort claimants.[82] The West Virginia Circuit Court found that "[t]he fact that plaintiffs accepted assignment of insurance proceeds from MSA does not subject the plaintiffs to the rulings made by these out-of-state courts; rather, plaintiffs are free to seek to enforce their contractual assignment rights in West Virginia, the state in which they reside."[83] The Supreme Court of Appeals agreed.[84] Thus, West Virginia courts, at least, have not been persuaded that the Pennsylvania and Delaware courts are the appropriate courts to address the rights of the West Virginia tort claimants.[85]

---

[82] *See Chafin*, 758 S.E.2d at 116; N. River Ins. Co.'s Br. Support Mot. J. Pleadings at 30, *N. River Ins. Co. v. Mine Safety Appliances Co.*, C.A. No. 8456-VCG, 2013 WL 6713229 (Del. Ch. Dec. 20, 2013); *Lambert v. Mine Safety Appliances Co.*, C.A. No. 10-C-69, 11-C-45 (W. Va. Cir. Ct. Sept. 4, 2013) (App. to Appellant's Opening Br. at A684); App. to Appellee's Answering Br. at B81. The Court of Chancery also concluded that it had no jurisdiction over the West Virginia tort plaintiffs.

[83] *Lambert v. Mine Safety Appliances Co.*, C.A. No. 10-C-69, 11-C-45 (W. Va. Cir. Ct. Sept. 4, 2013) (App. to Appellant's Opening Br. at A684). We recognize that North River disputes this conclusion as to the existing actions involving assignments. North River argues that tort claimants/assignees step into the shoes of MSA and would be subject to rulings by the Delaware and Pennsylvania courts. The West Virginia courts have expressed a contrary view. We need not resolve that issue in view of the fact that tort claimants in West Virginia may proceed against North River without assignments.

[84] *Chafin*, 758 S.E.2d 109 (W. Va. 2014) (App. to Appellee's Answering Br. at B103, B105).

[85] Hr'g Tr. at 29, *Moore v. Mine Safety Appliances Co.*, C.A. No. 10-C-35 (W. Va. Cir. Ct. Mar. 20, 2013) (denying North River's Motion to Stay and its Motion for Dismissal in the Moore action) (App. to Appellant's Opening Br. at A659); *Lambert*, C.A. Nos. 11-C-69, 11-C-45 (W. Va. Cir. Ct. Sept. 4, 2013) (denying the same in the consolidated *Lambert* and *Persinger* action) (App. to Appellant's Opening Br at A681). Moreover, the West Virginia courts have stated that the other state courts are not in a position to determine whether the settlement agreements are enforceable. Thus, there likely is not complete "mirror image" symmetry of the issues in the various proceedings.

The reluctance to interfere with the prosecution of a lawsuit in another jurisdiction when the Delaware courts do not have jurisdiction over all of the parties was articulated in *Peyton v. William C. Peyton Corporation*[86] as follows:

> It is true that where a court of equity has jurisdiction of the parties and the subject matter of a suit, it will prevent the defendant from removing the controversy to another jurisdiction through the device of a suit later instituted in such other jurisdiction . . . . But where the courts of the forum in which the first suit was inaugurated are, by reason of the absence of jurisdiction over all the parties in interest, powerless to render a decree that finally and completely concludes the matter in controversy, an injunction ought not to issue against the bringing of suits elsewhere if the effect of such injunction would be to interfere with an attempt by the defendant to bring the matter to a head before some other court where all the parties could be served and their respective claims conclusively determined.[87]

Thus, even though an injunction against further assignments might have some utility in slowing the flow of new litigation, given the lack of compete symmetry in the various proceedings, North River has not persuaded us that the Court of Chancery erred. Accordingly, the Court of Chancery did not abuse its discretion in declining to enjoin the pursuit of the claims against North River in separate jurisdictions, particularly where here, principles of federalism require considerations of comity between dual sovereign states.[88]

---

[86] 187 A. 849 (Del. Ch. 1936).

[87] *Id*. at 851-52.

[88] *Compare Box v. Box*, 697 A.2d 395, 398-99 (Del. 1997) ("Generally, it is a proper exercise of the Court of Chancery's discretion to permit parties simultaneously to pursue 'non-mirror image'

### *F. MSA's Ability to Settle*

We turn next to North River's third contention -- that the Court of Chancery abused its discretion in determining that an injunction against MSA's assignment of rights would impede MSA's ability to settle cases with tort claimants. The parties agree that we review this aspect of the Court of Chancery's ruling for an abuse of discretion.

This argument turns, to a certain extent, on the mechanics of MSA's settlements with the tort claimants -- a subject that was only briefly addressed in the parties' submissions. In response to questions at oral argument, MSA explained that MSA's assignments are not "blanket assignments." Rather, MSA settles with the tort plaintiffs for a settlement amount, part of which consists of cash paid up-front by MSA (the "Cash Amount"). MSA then assigns rights to that plaintiff to seek recovery of the capped remainder portion of the total settlement amount (the "Assignment Amount"). Thus, the total settlement amount equals the Cash Amount plus any potential Assignment Amount the tort claimant may

claims for relief in separate jurisdictions"); *Air Prods. & Chems., Inc. v. Lummus Co.*, 235 A.2d 274, 277 (Del. Ch. 1967) ("[I]njunctive power should not be exercised in a situation (not claimed to be present here) in which, because of a lack of jurisdiction over all of the parties in interest, the Delaware Court is powerless to render a decree finally and completely disposing of the matters in controversy."), *with Williams Nat'l Gas Co. v. BHP Petroleum Co., Inc.*, 1990 WL 38329 (Del. Mar. 12, 1990) (reversing the Court of Chancery's refusal to enjoin a later-filed, "mirror-image" Texas action where "the Texas action and this action involve identical parties and issues."); *Household Int'l, Inc. v. Eljer Indus., Inc.*, 1995 WL 405741, at *1 (Del. Ch. June 19, 1995) (enjoining a later-filed Texas action where "[t]here are no additional parties or significant legal issues in either of these suits. They are in effect the same suit in two jurisdictions.").

recover in future litigation against North River. For example, a tort claimant might settle with MSA for a total settlement amount, including a Cash Amount, on a policy where the total coverage greatly exceeds the settlement amount. MSA argued that if it were not allowed to participate in the litigation against North River following the settlement and assignment of its rights, its interests could be adversely affected because West Virginia courts could make rulings as to the Assignment Amount, which could adversely affect MSA's rights as to the remaining portions of the policy not affected by the settlement.

The impact of an injunction on MSA under these circumstances is far from clear. For example, at argument, MSA took no definitive position as to whether a judgment by a West Virginia court in such a scenario could be used in a preclusive fashion against MSA elsewhere if MSA were not a party participating in a West Virginia proceeding by a tort claimant against North River. If such a judgment were not entitled to preclusive effect, then MSA's argument that it would be harmed by an injunction against further assignments would be undermined. Because the record is both scant and inconclusive on these points, we decline to find error in the Vice Chancellor's conclusion that an injunction would impair MSA's ability to defend its rights relating to the North River policies. Nor do we find error in the Vice Chancellor's conclusion that an injunction would hamper MSA's ability to settle cases with the tort claimants. Although the record shows

37

that MSA has settled cases without assigning its rights, MSA's assignments have facilitated settlement in the West Virginia Actions described above. On this record, we decline to find an abuse of discretion.

In sum, the record below compels us to conclude that the judgment below was directed by conscience and reason, and was neither arbitrary nor capricious. Our conclusion rests firmly on the proposition that the power to enjoin prosecution of litigation in a foreign jurisdiction is discretionary, and should be exercised cautiously giving due regard to the equities of the case at hand, and considerations of comity as well as fairness and efficiency. Considering all of the factors set forth above, we find that the Court of Chancery did not abuse its discretion.

## CONCLUSION

Based upon the foregoing, the order of the Court of Chancery is **AFFIRMED**.