# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| COUNCIL OF ASSOCIATION OF UNIT OWNERS OF PELICAN COVE CONDOMINIUM, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) | C.A. No. 12793-VCG |
| DALE E. YEILDING and SANDRA YEILDING, | ) ) ) ) | |
| Respondents, | ) ) | |
| v. | ) ) | |
| ROBERT and KAREN LANGDON; CATHERINE ROBINSON; DONALD and LORRAINE FORD; PAUL LUISI, LURRAINE LUISI, MICHAEL GAVRON, CATHERINE GAVRON, ROBERT and DEBORAH GAVRON; KAROLYN SCHRUFER; and WILLIAM and KATHERINE LUCAS, and SHERRY GRETH, | ) ) ) ) ) ) ) ) ) ) | |
| Third-Party Respondents. | ) | |

## MEMORANDUM OPINION

Date Submitted: February 13, 2019
Date Decided: June 3, 2019

Richard E. Berl, Jr., of HUDSON, JONES, JAYWORK & FISHER, LLC, Lewes, Delaware, *Attorney for Petitioner and Third-Party Respondents (except Sherry Greth).*

Dean A. Campbell, of LAW OFFICE OF DEAN A. CAMPBELL, P.A., Georgetown, Delaware, *Attorney for Respondents.*



Blake W. Carey, of THE SMITH FIRM, LLC, Rehoboth Beach, Delaware, *Attorney for Third-Party Respondent Sherry Greth.*

GLASSCOCK, Vice Chancellor

This matter involves a request by a condominium owners' association, the Council for the Association of Unit Owners of Pelican Cove Condominium (the "Council"), to enforce a six-person per unit maximum occupancy limitation, located in the declaration of the condominium (the "Declaration"), recorded in the chain of title to the property. The condominium, named Pelican Cove Condominium (the "Condominium" or "Pelican Cove"), itself is an old former motel property located just south of Head of Bay Cove in Dewey Beach.[1] The Respondents (the "Yeildings") are owners of a unit in the Condominium who advertise their unit as a vacation rental for groups of up to ten persons.

The matter is before me on what the parties describe as full (not partial) Cross-Motions for Summary Judgment. The Yeildings make numerous arguments as to why the limitation is illegal or otherwise unenforceable; none has merit. Therefore, I find that the Yeildings are in breach of the occupancy limits of the Declaration. The Council's briefing is conspicuously silent on its entitlement to injunctive relief, so the issue of remedy remains, and the Cross-Motions for Summary Judgment are denied. The Yeildings also argue that they did not receive required notice of the Council meeting at which this litigation was authorized. To the extent this is a claim

---

[1] When Pelican Cove Condominium was named in the 1970s, pelicans were a rare sight in Dewey Beach; the name conjured, perhaps, images of southern climes and palm trees. As the climate has warmed, Brown Pelicans have become summer visitors to Dewey nearly as reliably as their human counterparts.

for relief, I find it unripe, as the Yeildings' potential remedy would be to avoid a unit owners' surcharge for litigation expense, if any, about which the record (as disclosed through briefing) is also silent.[2]

In addition, the Yeildings bring claims against the former unit owner from whom they purchased their unit in Pelican Cove, Sherry Greth, alleging breach of contract and fraud in the inducement of the sale. This matter is also subject to Cross-Motions for Summary Judgment. However, I find issues of fact remain, including matters of intent and reasonable reliance, that would benefit from live testimony. Moreover, the Yeildings concede that their Motion cannot resolve damages issues, which would remain for trial. Accordingly, the Cross-Motions on these claims are denied. My reasoning follows.

As the reader who perseveres will discover, in addition to the matters just listed, there are other issues, tit-for-tat claims, and motions, which I also address and attempt to resolve, below.

## I. BACKGROUND

This matter is before me on the parties' Cross-Motions for Summary Judgment; as a result, the following facts are not in dispute and are drawn from the stipulated record.

---

[2] Accordingly, this part of the Yeildings' Counterclaim is dismissed without prejudice.

## A. Pelican Cove Before the Yeildings

In 1978, the owners of a small motel located in Dewey Beach, Delaware converted their motel into a condominium, Pelican Cove.[3] Pelican Cove was established by recording the Declaration[4] and a Code of Regulations (the "Code of Regulations")[5] with the office of the Recorder of Deeds in and for Sussex County, Delaware.[6] No party disputes that Pelican Cove was formed in compliance with the Unit Property Act of the State of Delaware.[7]

The Declaration has been amended on several occasions, but at all times has included a provision, titled "Restriction on Use," which provides that:

> Each unit shall be used exclusively for residential purposes as a single-family dwelling, and each unit shall not be occupied by more than 6 persons. No unit shall be used for any business or commercial or other purposes, except that units may be leased for single-family occupancy

---

[3] The parties have at times made allegations that are unsupported by citations to the record, but, which are, nonetheless, agreed to or unopposed in the counter briefing. The assertion that Pelican Cove was a formerly a small motel is one such example. For purposes of these Motions only, I have accepted these factual allegations as true. *See* Pet'r's Opening Br. in Support of its Mot. for Summ. J. [hereinafter Pet'r's Opening Br.], at 2; Resp't's Dale and Sandra Yeilding's Resp. Br. to Pl.'s Mot. for Summ. J. and Yeilding's Cross-Mot. for Summ. J. on Their Countercl. Against Pet'r and Against All Third-Party Resp'ts [sic] [hereinafter the Resp'ts' Opening Br.], at 5 ("The historical facts recited by Petitioner are largely undisputed."); *see also* Pet'r's Opening Br., Ex. A, "Declaration Establishing a Plan for Condominium Ownership of Premised located in Lewes and Rehoboth Hundred, Sussex County, Delaware and for Submitting Certain Real Property to the Unit Property Act of the State of Delaware" [hereinafter the Declaration].
[4] *See* Declaration.
[5] Third-Party Resp't Sherry Greth's Reply Br. in Opp'n to Resp'ts' Cross-Mot. for Summ. J. on Their Crosscl. Against Third-Party Resp't Sherry Greth and Sherry Greth's Cross-Mot. for Summ. J. Against Resp'ts [hereinafter Greth's Opening Br.], Ex. L, "Code of Regulations for Pelican Cove Condominium," [hereinafter the Code of Regulations].
[6] Declaration ¶ 1; *see also* Code of Regulations.
[7] *See* Declaration ¶¶ 1, 22; *see generally* Pet'r's Opening Br.; Resp'ts' Opening Br.; Greth's Opening Br.

of not more than 6 persons by the owners, any unit owner, or any unit mortgagee in possession; . . .[8]

According to the Declaration, Pelican Cove contains seven units.[9] Six units are former motel rooms ("Units 1–6"), and are now one- or two-bedroom condominium units.[10] The seventh unit ("Unit 7"), which was the former motel owners' quarters, is now a three-bedroom condominium unit.[11]

The Council, the Petitioner here, comprises a representative from each of Pelican Cove's seven units.[12] The Council is tasked in the Declaration with managing Pelican Cove.[13] The Declaration sets each unit's ownership interest in the common elements of Pelican Cove.[14] Units 1–6 each have an eleven percent ownership interest;[15] Unit 7 has a thirty-four percent ownership interest.[16] Pelican Cove assesses fees to each unit in the same proportion as the unit's ownership interest.[17] Each unit's voting interest is also the same as their ownership interest.[18] The Third-Party Respondents in this action, with the exception of Sherry Greth, are

---

[8] Declaration ¶ 14; *see also* Pet'r's Opening Br., Ex. B. (amending the Declaration but making no change to the occupancy limit).
[9] Declaration ¶ 6.
[10] *See* Pet'r's Opening Br., at 2 (citing generally the deposition testimony of William Lucas but not providing the transcript in full); Resp'ts' Opening Br., at 5.
[11] *See* Pet'r's Opening Br., at 2 (citing generally the deposition testimony of William Lucas but not providing the transcript in full); Resp'ts' Opening Br., at 5.
[12] Code of Regulations, Art. III, § 1.
[13] *See* Declaration ¶ 15; Code of Regulations, Art. III, §§ 2–3.
[14] Declaration ¶ 9; *Id.*, Sched. B.
[15] *Id.* ¶ 9.
[16] *Id.*
[17] *Id.*, Sched. B.
[18] Code of Regulations, Art. II, § 8.

4

the current owners of Units 1–6.[19]  Sherry Greth, who is a Third-Party Respondent, purchased Unit 7 in 1997,[20] but is no longer a current Pelican Cove unit owner, having sold Unit 7 in 2015 to the Yeildings.[21]  Prior to selling Unit 7, Greth served as the Council's treasurer.[22]

At issue in this litigation is Unit 7 of Pelican Cove and the Declaration's restriction of occupancy per unit to six persons.  Before Greth sold Unit 7 in 2015, only twice did the Council have the opportunity to enforce the six-person occupancy limit.[23]  In neither instance did the Council take formal action against the unit owners.[24]  After Pelican Cove was formed, the Town of Dewey Beach adopted an ordinance (the "Dewey Beach Ordinance") on overcrowding, according to Section 112-4, titled "Dwelling Occupancy," "[a]ny dwelling unit used for residential

---

[19] *See* Pet'r's Reply to Countercl. and Answer to Third-Party Compl. of All Third-Party Resp'ts Exception Sherry Greth, at 21–27.  It appears, from the Third-Party Respondents' (with the exception of Sherry Greth) Answer that one Third-Party Respondent is deceased and another's name has been misspelled. *Id.*  I granted a Stipulation to Suggestion of Death, *see* D.I. 17, but the parties have failed to update the case caption, which, I note, I have corrected here.

[20] Greth Dep. 10:20–11:1.  Greth purchased Unit 7 with her former husband, but retained sole ownership of the unit after their divorce. *Id.* at 10:3–12.

[21] *See* Greth's Opening Br., Ex. M (the Yeildings signed their mortgage in March 2015).

[22] Greth Dep. 14:8–15:5.

[23] Lucas Dep. 54:3–56:14.

[24] In one instance, a family would often have guests overnight, raising the number of people staying in the unit over six; the problem was resolved after the Council discussed the issue with the unit owner.  Lucas Dep. 54:3–14.  In another instance, a family of six welcomed a seventh member, via the traditional method; the Council took no action and the unit owner eventually sold their unit. Lucas Dep. 54:16–56:4.

purposes shall be overcrowded if the number of person sleeping or living in said dwelling exceeds two persons per bedroom."[25]

### B. The Yeildings Purchase a Condominium in Pelican Cove

Dale and Sandra Yeilding, the Respondents in this action, purchased Unit 7 from Greth in 2015.[26] The Yeildings had previously vacationed in Dewey Beach and wished to purchase a vacation property in that area,[27] specifically a property that could generate rental income.[28] The Yeildings, who were represented by a real estate agent,[29] found Unit 7 listed for sale and inquired further.[30] Greth, who owned Unit 7, was also represented by a real estate agent.[31] The Yeildings asked to rent Unit 7 for a week in August 2014, ahead of a prospective purchase.[32] Greth had only rented Unit 7 once before, but agreed.[33] The Yeildings subsequently asked for a rental agreement to sign.[34] After doing some online research, Greth then created a rental agreement.[35] The rental agreement Greth prepared contained the provision:

---

[25] Dewey Beach Code § 112-4. The ordinance defined a bedroom as "any room used for sleeping purposes separate and apart from other areas of the dwelling" and also provided that "a living room or other similar room equipped for sleeping purposes shall be considered the equivalent of a bedroom, but only one such room shall apply per dwelling unit." *Id.*
[26] *See* Greth's Opening Br., Ex. M.
[27] D. Yeilding Dep. 6:6–7:9, 13:11–17.
[28] *Id.* at 21:13–22:4.
[29] *Id.* at 12:8–13:7.
[30] *Id.* at 14:20–15:16; Greth Dep. 26:17–27:2; *see also* Resp'ts' Opening Br., Ex. L.
[31] Greth Dep. 26:17–27:2.
[32] *Id.* at 32:20–33:19; D. Yeilding Dep. 18:17–20; *see also* Resp'ts' Opening Br., Ex. I.
[33] Greth Dep. 17:16–18:18.
[34] Greth's Opening Br., Ex. E.
[35] Greth Dep. 35:2–6; *see also* Resp'ts' Opening Br., Ex. I.

"Occupancy. Tenants agree that no more than eight (8) people will occupy the Unit overnight."[36] The rental agreement also contained a set of Greth's "policies" for "Pelican Cove – Unit 7," which included, under the title "Occupancy," a policy that "[n]o more than eight (8) persons are permitted to stay overnight in the unit."[37] Greth's real estate agent thereafter e-mailed the rental agreement to the Yeildings, which they then signed, in addition to making a rental payment.[38]

The Yeildings rented Unit 7 from August 16 to August 23, 2014.[39] On August 28, five days later, the Yeildings made an offer to purchase Unit 7.[40] Greth agreed.[41] Closing, however, took several months.[42] On October 2, 2014, the Yeildings' real estate agent e-mailed certain documents to the Yeildings, including, at least, a Resale Certificate prepared by Greth (the "Resale Certificate") and the Code of Regulations.[43] The e-mail and attached documents referenced other documents for the Yeildings to review,[44] including the Declaration containing the restriction that "each unit shall not be occupied by more than 6 persons."[45] In particular, the Resale

---

[36] Resp'ts' Opening Br., Ex. I.
[37] *Id.*
[38] Greth's Opening Br., Ex. E; *see also* Greth's Opening Br., at 7; Resp't Yeilding Reply Br. in Support of Their Mot. for Summ. J. Against Third-Party Def. Sherry Greth and Third-Party Pls.' Yeilding's Answering Br. in Support of Her Cross-Mot. for Summ. J., at 2–3.
[39] *See* Resp'ts' Opening Br., Ex. I (contains a typo, 2013 should be 2014).
[40] *See* Greth's Opening Br., Ex. F, at 63 (the Yeildings signed on August 28, 2014).
[41] *See id.* (Greth signed on September 6, 2014).
[42] *See* Greth's Opening Br., Ex. M.
[43] Greth's Opening Br., Ex. H.
[44] Resp'ts' Opening Br., Ex. N; Greth's Opening Br., Ex. H.
[45] Declaration ¶ 14.

Certificate noted that the Declaration had been provided to the Yeildings.[46]  The Yeildings' real estate agent wrote in the e-mail that if the Yeildings objected to anything in the documents, they could, within five days, cancel the purchase.[47]  The Yeildings printed their real estate agent's e-mail, handwrote "Documents received and acceptable," and signed their names.[48]  Nonetheless, Dale Yeilding now avers that he read only the Code of Regulations, and not the Declaration.[49]  The Yeildings both signed the Resale Certificate.[50]  The sale of Unit 7 closed on March 12, 2015.[51]

*C. Pelican Cove After the Yeildings Purchase Unit 7*

After their purchase of Unit 7 closed, the Yeildings hired a property manager.[52]  The property manager was responsible for finding tenants, checking tenants in, and responding to tenant concerns.[53]  Consistent with the Yeildings' instructions, the property manager has advertised and leased Unit 7 for rent with an occupancy limit of ten people.[54]  Other unit owners have complained that Unit 7 has been rented to groups of more than six persons.[55]

---

[46] *See* Greth's Opening Br., Ex. H (stating that "[a]ttached is the Resale Certificate, etc. for your review"); *see also* Greth's Opening Br., Ex. G; Resp'ts' Opening Br., Ex. N.
[47] Greth's Opening Br., Ex. H.
[48] *Id.*
[49] D. Yeilding Dep. 30:15–32:18.
[50] Greth's Opening Br., Ex. G.
[51] Greth's Opening Br., Ex. M; *see also* D. Yeilding Dep. 38:10–14.
[52] D. Yeilding Dep. 38:18–20.
[53] *Id.* at 39:15–42:1.
[54] *Id.* at 47:3–11.
[55] Resp'ts' Opening Br., Exs. C, E.

The Yeildings' property manager spoke at a Council meeting in May 2016, where he provided his contact information to the Council members and instructed them to call him if they had complaints about Unit 7 rental tenants.[56] The Council's meeting minutes from the May 2016 meeting note at least three occasions when Unit 7 renters were allegedly unruly during the prior year.[57] The Yeildings' property manager has been contacted "five (5) or six (6) times by other Pelican Cove owners and asked to address the number of tenants in Unit 7."[58]

*D. Procedural History*

The Petitioner filed its Complaint on October 2, 2016. The Respondents filed their Answer on November 14, 2016, and also filed a Counterclaim and a Third-Party Complaint. Third-Party Respondent Sherry Greth filed her Answer to the Respondents' Third-Party Complaint on December 27, 2016. The Petitioner and the other Third-Party Respondents filed their Answer on January 3, 2017. On April 20, 2018, the Petitioner filed a Motion for Summary Judgment. The Respondents filed a Cross-Motion for Summary Judgment on June 21, 2018 on their Counterclaim against the Petitioner and their Third-Party Complaint against the Third-Party Respondents. Third-Party Respondent Sherry Greth, in turn, filed a Cross-Motion

---

[56] *Id.*, Exs. D, E.
[57] *Id.*, Ex. E; *see also id.*, Ex. C.
[58] *Id.*, Ex. E.

9

for Summary Judgment against the Respondents on August 16, 2018. I heard Oral Argument on the three Cross-Motions for Summary Judgment on February 13, 2019.

## II. ANALYSIS

The Council (the Petitioner) initiated this action seeking permanent mandatory injunctive relief requiring the Yeildings (the Respondents) to comply with the Declaration, specifically the per unit occupancy limit. The Yeildings filed a Counterclaim and a Third-Party Complaint, alleging, in part, that the Council—and the individual unit owners of Pelican Cove—are in violation of the Federal Fair Housing Act (the "FHA"), the Delaware Fair Housing Act (the "DFHA"), and the Federal Civil Rights Act. The Yeildings further claim that the Council meeting authorizing this litigation should be invalidated, and they bring a claim for nuisance against Third-Party Respondent Robert Langdon. Additionally, the Yeildings seek declaratory judgment that the Declaration's six-person per unit occupancy limit is unenforceable. The Yeildings also, in the event that I do not find the six-person occupancy limit unenforceable, bring a claim for breach of contract against Third-Party Respondent Greth and a claim for fraud and misrepresentation against Greth and the Council.

The Council, the Yeildings, and the Third-Party Respondents have all filed Cross-Motions for Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together

10

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[59] Where parties have filed cross-motions for summary judgment, the motions are deemed "to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions," if the parties have not "presented argument to the Court that there is an issue of fact material to the disposition of either motion."[60] The parties do not contend that material factual disputes exist.[61] I begin with the core issue of this litigation, the Declaration's occupancy limit.

### A. The Cross-Motions/The Council's Claims

#### 1. The Occupancy Claim

##### a. The Yeildings Are in Breach of the Declaration

The Declaration states that "each unit shall not be occupied by more than 6 persons" and that "that units may be leased for single-family occupancy of not more than 6 persons by the owners."[62] The parties argue, considerably, over the definition of "occupy" in this context. The Yeildings submit that "occupy" is ambiguous and

---

[59] Ct. Ch. R. 56(c).
[60] Ct. Ch. R. 56(h).
[61] The Petitioner, the Respondents, and the Third-Party Respondents take issue with certain aspects of the factual background as presented by the others. However, many of the issues are not disputes of fact but disputes over the conclusion to be drawn from certain facts. The issues that can be properly categorized as disputes of fact do not involve material facts. *See, e.g.*, Resp't's Dale and Sandra Yeildings' Reply Br. in Support of Their Cross-Mot. for Summ. J., at 4 (disputing the reason the family of seven mentioned above decided to leave Pelican Cove).
[62] Declaration ¶ 14.

11

therefore the limitation is unenforceable. It is, however, unnecessary to supply a definition. The plain language of the Declaration prohibits the *leasing* of any unit in Pelican Cove to groups of more than six persons. The Yeildings advertise and lease Unit 7 to groups as large as ten persons. Such advertisement and leasing is in clear violation of the Declaration.

The Yeildings seek a declaratory judgment that the six-person occupancy limit is unenforceable, and that a limit on occupancy (regardless of definition) should instead be set by local or state ordinance, in particular the Dewey Beach Ordinance. The Yeildings proffer several arguments to support their claim that the Declaration's occupancy limit is invalid. The Yeildings claim that the occupancy limit is a deed restriction, which has lost its force because it is either unreasonable or serves no legitimate purpose. I need not examine the reasonability or legitimacy of purpose of the occupancy limit because it is not a deed restriction. Deed restrictions are reciprocal covenants that run with property, and they are indeed construed narrowly.[63] This, however, is a pure contract case; "a condominium declaration and its accompanying code of regulations together form no more than an ordinary

---

[63] *See Mendenhall Vill. Single Homes Ass'n v. Dolan*, 1994 WL 384579, at *2 (Del. Ch. July 13, 1994) ("Under Delaware law, restrictive covenants affecting real property, such as the deed restrictions at issue here, are strictly construed and should not be enlarged by implication by the courts."), *aff'd*, 655 A.2d 308 (Del. 1995) (TABLE); *New Castle County v. Pike Creek Recreational Servs., LLC*, 82 A.3d 731, 745–46 (Del. Ch. 2013) ("Covenants restricting the free use of property must be strictly construed.") (quoting *Regency Grp., Inc. v. New Castle Cty.*, 1987 WL 1461610, at *1 (Del. Ch. Dec. 3, 1987)).

contract between the unit owners."[64]  Given the purely contractual nature of the Declaration, it is not appropriate for me to now second guess the reasonability or "legitimacy" of purpose of the bargain struck.  Similarly, the Yeildings' argument that that the passage of Dewey Beach's Ordinance on occupancy was a "changed circumstance" that negated enforcement of the "deed restriction" is misplaced, given the purely contractual nature of the Declaration.  Furthermore, the Yeildings do not argue that the Dewey Beach Ordinance supersedes the contractual limits on occupancy in the Declaration; I note that the Ordinance sets occupancy *maximums*, and the occupancy restriction in the Declaration allows no greater occupancy than does the Ordinance.  In, other words, the Declaration and the Ordinance are not in conflict.

The Yeildings entered into a contract to purchase Unit 7.  As part of the bargain struck, they agreed to abide by the Declaration, including the occupancy limit.  The Yeildings assert that they did not read the Declaration before the purchase and, despite contrary evidence in the record,[65] aver that the Declaration was not provided to them.  The Yeildings' ignorance of the Declaration, whether it is inadvertent or stems from a lack of initiative, does not, here, raise a genuine issue of material fact.  The Yeildings had, at least, constructive notice of the Declaration

---

[64] *Council of Dorset Condo. Apartments v. Gordon*, 801 A.2d 1, 5 (Del. 2002).
[65] *See* Greth's Opening Br., Ex. G.

13

because it was recorded with the Recorder of Deeds in and for Sussex County.[66] Furthermore, the Yeildings signed the Resale Certificate, which stated that they have been provided with the Declaration. The Yeildings cannot claim ignorance as a defense, at least as to the Council's claim.

For the foregoing reasons, I find the Yeildings in ongoing breach of the Declaration.

### b. The Yeildings' Defenses to Enforcement of the Occupancy Limit

The Yeildings argue that enforcement of the occupancy limit would be unlawful, on various grounds. They assert these arguments both as defenses and counterclaims. I find them without merit, as discussed below.

### i. The Federal Civil Rights Act

In their Counterclaim, the Yeildings allege that the Council and the current owners of Units 1–6 have, through the six-persons occupancy limit, violated the Federal Civil Rights Act. The Yeildings, however, make no mention of the Civil Rights Act in their Cross-Motion for Summary Judgment and subsequent briefing, and I consider the defense based on this Act (if any) waived.

---

[66] *See, e.g.*, *Van Amberg v. Bd. of Governors of Sea Strand Ass'n*, 1988 WL 36127, at *7 (Del. Ch. Apr. 13, 1988) ("Constructive notice is normally established by properly recording the instrument that contains the alleged restriction. [A] purchaser is bound with constructive notice of all recorded instruments and the recitals therin lying within his chain of title, but a deed or instrument lying outside his chain of title imparts no notice to him." (internal quotations and citations omitted)).

ii. The Federal Fair Housing Act and the Delaware Fair
Housing Act

In their Counterclaim, the Yeildings allege that the Council and the current owners of Units 1–6 are discriminating on the basis of age and familial status, in violation of the FHA and the DFHA. The FHA and DFHA operate similarly.[67] A *prima facie* case for discrimination under the DFHA can be made by showing either discriminatory treatment or discriminatory effect (without proof of discriminatory intent).[68] The Yeildings' argument, as I understand it, is that according to deposition testimony, certain unit owners believe the purpose of the occupancy limit is to prevent overcrowding and to stop large groups from staying at Pelican Cove. The result of this limitation, per the Yeildings, is that families with up to six members can stay at Pelican Cove, and families with over six members cannot. This, the Yeildings contend, constitutes discrimination based on "family size."[69] The Yeildings then suggest that discrimination based on "family size" is a type of

---

[67] *See Newark Landlord Ass'n v. City of Newark*, 2003 WL 21448560, at *9 (Del. Ch. June 13, 2003) ("In the absence of Delaware decisions construing this provision [of the DFHA], I may also review decisions construing various federal antidiscrimination statutes. A natural source of guidance, due to the similarity in structure, language and purpose between the underlying statutes, are decisions construing the provisions of the Federal Fair Housing Act." (internal quotations and citations omitted)).

[68] *Id.* at *10.

[69] Resp'ts' Opening Br., at 34.

"familial status" discrimination, illegal under the FHA[70] and the DFHA.[71] The Yeildings argue that, having demonstrated that families of seven to infinite members are excluded from renting a single unit in Pelican Cove, they have alleged a *prima facie* case of disparate or discriminatory treatment, and the burden to demonstrate compliance with the Acts now shifts to the Council.[72]

Using the Yeildings' standard, *any* limitation on occupancy would be impermissibly discriminatory, because a family of a larger size would be excluded thereby. This argument is frivolous. The language of the occupancy limit does not differentiate based on—and it in fact says nothing about—any renting family's *characteristics*,[73] only group *size*.[74] In other words, the Declaration's occupancy limit is facially neutral, and the Yeildings have pointed to no evidence of

---

[70] According to the FHA, it is unlawful "[t]o discriminate against any person in the terms, condition, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

[71] According to the DFHA, it is unlawful "[t]o discriminate in the sale or rental, to refuse to sell or rent, to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, national origin, religion, creed, sex, marital status, familial status, source of income, age, sexual orientation, gender identity or disability." 6 *Del. C.* § 4603.

[72] Resp'ts' Opening Br., at 35–36.

[73] This is with the exception that rentals in the Declaration are contemplated to "single family groups," a restriction that neither side in this litigation has challenged, and that the Council does not seek to enforce.

[74] In *Fair Housing Advocates Association, Inc. v. City of Richmond Heights, Ohio*, the plaintiff argued that an ordinance which tied maximum dwelling occupancy to the size of the dwelling would prohibit families from finding housing in violation of the FHA. 209 F.3d 626, 637 (6th Cir. 2000). However, the United States Court of Appeals for the Sixth Circuit found this insufficient to establish intent to discriminate and noted that the "ordinances are facially neutral and apply equally to families and unrelated individuals who occupy dwellings . . . ." *Id.*

16

discrimination against families at Pelican Cove (in fact, the record suggests that the various units of Pelican Cove have been the home of or rented to many families without issue).[75] Furthermore, the Yeildings, I note, provide no statutory or case support for their argument that "family size" is protected under either the FHA[76] or the DFHA.[77]

The Yeildings also aver that the limitation improperly discriminates on the basis of age. The Yeildings' rationale—to the extent I understand it—is that the Council's complaints against rental tenants of Unit 7 include, primarily, complaints against large groups of young people. Additionally, according to the Yeildings, large families (presumably families of over six members) are "typically younger adults with multiple children," and the occupancy limit, therefore, discriminates on

---

[75] This case bears no relationship to *United States v. Lepore*, cited by the Yeildings, where a United States District Court in Pennsylvania struck down a mobile home park occupancy rule that restricted occupancy to two persons per unit, after the park was forced to abandon an additional rule that prohibited children, but attempted to evict a family with children regardless. *See* 816 F. Supp. 1011 (M.D. Pa. 1991).

[76] "Family size" is not a protected class under the FHA. *See Fair Housing Advocates Ass'n, Inc.*, 209 F.3d at 638 ("Further, as the Cities point out, families of four, as opposed to families of three, are not protected classes.")

[77] "Family size" also does not appear to be a protected class under the DFHA, which defines "familial status" (which is a protected class) as:

> [O]ne or more individuals who have not attained the age of 18 years being domiciled with:
>> a. A parent or another person having legal custody of such individual or individuals; or
>> b. The designee of such parent or other person having such custody, with the written permission of such parent or other person; or
>> c. Any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

6 *Del. C.* § 4602(14).

the basis of age.[78]  This argument, I note, is unsupported in the record and is inconsistent with common sense.  The argument is insufficient for a facial showing of discrimination; furthermore, the Council does not seek to (nor does the plain language of the occupancy limitation) prevent the Yeildings from renting to certain age groups.  The argument that the Council has discriminated based on age, in violation of the DFHA, is frivolous.

I conclude that none of the Yeildings' defenses to enforcement of the occupancy limit have merit.

### c. Remedy

The Council asks for summary judgment on its claim that the Yeildings have breached the Declaration's occupancy limit.  I have found that the Yeildings are engaged in ongoing breach, and that their purported defenses to enforcement are without merit.  In its Complaint, the Council seeks permanent injunctive relief.  "To succeed in a request for a permanent injunction, a party must show (i) actual success on the merits; (ii) that it would suffer irreparable harm if the injunction is not granted; and (iii) that the balance of the equities favors it."[79]  The Council has succeeded on the merits.  However, it has made no argument demonstrating irreparable harm or

---

[78] Resp'ts' Opening Br., at 39.

[79] *North River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369, 379 n.47 (Del. 2014) (citing *Christiana Town Ctr., LLC v. New Castle Cty.*, 2003 WL 21314499, at *2 (Del. Ch. June 6, 2003), *aff'd*, 2004 WL 77868 (Del. Jan. 16, 2004)).

the balance of the equities. The Council's silence regarding entitlement to equity rings in the ears; conversely, the Yeildings have not had a chance to respond. It would be inappropriate for me attempt to parse the facts and make a determination without argument on these issues.

Since the issue of the appropriate remedy for the occupancy breach is unresolved, the Council's request for summary judgment on the occupancy claim is denied.

### 2. The Council's Nuisance Claim

The Council alleges that the Yeildings are permitting nuisance, caused by their various rental tenants, in violation of the Declaration.[80] However, the Council points to no evidence demonstrating that the Yeildings or their tenants are creating a nuisance at common law or as prohibited by the Declaration. Therefore, the Yeildings are entitled to a judgment on their Cross-Motion, and the claim is dismissed.

---

[80] According to the Declaration:
> No unit owner or occupant shall willingly commit or permit either within his unit or on or about the common elements any act, conduct, condition, or material which is illegal, unsanitary, unsafe, a nuisance, so loud as to unreasonably and repeatedly disturb other unit occupants, or reason for increasing the rates of insurance applicable to the property.

Declaration ¶ 14.

*B. The Cross-Motions/The Yeildings' Counterclaims Against the Council and Third-Party Respondents*

1. The Yeildings' Requests for Declaratory Judgment Based on Purported Statutory Violations

I have found above that the Yeildings' defenses based on purported violations of the Federal Civil Rights Act, the FHA, and DFHA, are without merit, and that the Declaration's six-person occupancy limit is enforceable. The Council is, accordingly, entitled to summary judgment with respect to the Yeildings' mirror-image counterclaims for a declaratory judgment that the Council has violated these statutes.

2. The Yeildings' Counterclaim for Fraud Against the Council

The Yeildings' Counterclaim and Third-Party Complaint alleges that Greth *and the Council* committed fraud and misrepresentation by failing to supply the Declaration and not specifically disclosing the six-person occupancy limit to the Yeildings. Yeildings' briefing, however, is bereft of any allegation of fraud against the Council. In their Cross-Motion for Summary Judgment, the Yeildings reference this claim as only against Greth. Therefore, I consider the allegation of fraud waived as against the Council, which is accordingly entitled to a judgment on this claim.

*C. The Cross-Motions Concerning the Yeildings' Claims for Breach of Contract and Fraud Against Third-Party Respondent Greth*

The Yeildings claim that Greth committed fraud and breach of contract in relation to the six-person occupancy limit. The basis for both the breach of contract

claim and the claim for fraud in the inducement against Greth is the rental agreement, accompanied by a statement of "policies" for the unit, which Greth prepared for the Yeildings, and which both listed an eight-person occupancy limit for Unit 7. Per the Yeildings, Greth should have revealed the discrepancy between the Rental Agreement/policies for "Pelican Cove – Unit 7" and the Declaration in the contract for sale of Unit 7 and the accompanying statutorily-required disclosure statement. In other words, the Yeildings say they expected they were purchasing a unit that could be rented to eight persons, but they received a unit rentable to no more than six persons.[81]

Regarding these claims, summary judgment is not appropriate. Genuine issues of material fact remain as to the elements of fraud[82] and breach of contract, including intent and reasonable reliance. Furthermore, the Yeildings concede that their Cross-Motion for Summary Judgment, if granted on the fraud and breach of contract claims, could not resolve the issue of damages, which would in any event, necessitate further factual development.[83] As a result, both the Yeildings' Cross-

---

[81] Which they promptly advertised for rental to groups of up to ten persons.

[82] "To establish a claim for fraud, a plaintiff must prove (i) a false representation, (ii) a defendant's knowledge or belief of its falsity or his reckless indifference to its truth, (iii) a defendant's intention to induce action, (iv) reasonable reliance, and (v) causally related damages." *In re Wayport, Inc. Litig.*, 76 A.3d 296, 323 (Del. Ch. 2013) (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).

[83] Resp'ts' Opening Br., at 44–45 ("Should the Court find that the six (6) person limitation is enforceable, Yeilding prays the Court will conduct an inquisition hearing to determine monetary damages, or in the alternative, transfer the claim as an action at law to the Superior Court.").

Motion for Summary Judgment and Greth's Cross-Motion for Summary Judgment are denied.

*D. The Yeildings' Nuisance Claim Against Third-Party Respondent Landon*

The Yeildings in the complaint allege a nuisance action against Council Member and Third-Party Respondent Robert Langdon. The briefing is silent as to this claim, and the record is bare. Therefore, the nuisance counterclaim is dismissed.

## III. CONCLUSION

The parties filed what purported to be Cross-Motions for full (not partial) Summary Judgment. The Council has succeeded on the merits of the occupancy claim, but has failed to make any showing on its requested relief; accordingly, the Cross-Motions for Summary Judgment on the occupancy claim are denied. The Council's nuisance claim is unsupported, and the Yeildings are entitled to judgment on that claim. The Yeildings' counterclaims for a declaration as to the alleged illegality of the occupancy limit are either untenable or have been waived, and the Council is entitled to judgment on the Yeildings' requests for declaratory judgment. The Yeildings' nuisance claim against Langdon has been waived, and is dismissed. The Council is entitled to judgment on the Yeildings' fraud claim against the Council. The Yeildings' claim regarding the timing and notice of the meeting of the Council is unripe, and is dismissed without prejudice.

With respect to the Yeildings' fraud and contract claims against Third-Party Respondent Greth, material issues of fact remain, and the Cross-Motions are accordingly denied.

The parties should present an appropriate form of order.