**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: March 26, 2020
Date Decided: May 13, 2020

Richard E. Berl, Jr., Esq.
HUDSON, JONES, JAYWORK &
FISHER, LLC
Dartmouth Business Center
34382 Carpenter's Way, Suite
Lewes, Delaware 19958

Dean A. Campbell, Esq.
LAW OFFICE OF DEAN A. CAMPBELL,
P.A.
110 W. Pine Street
Georgetown, Delaware 19947

Blake W. Carey, Esq.
THE SMITH FIRM, LLC
323D Rehoboth Avenue
Rehoboth Beach, Delaware 19971

> RE: *Council of Association of Unit Owners of Pelican Cove
> Condominium v. Dale E. Yeilding, et al.*
> C.A. No: 12793-VCG

Dear Counsel:

This matter is before me on the Petitioner's Renewed Motion for Summary

Judgment. The Petitioner is the Council for the Association of Unit Owners of

Pelican Cove Condominium (the "Council"), a condominium owners' association.

The condominium, Pelican Cove Condominium ("Pelican Cove"), is a former motel

property located just south of Head of Bay Cove in Dewey Beach. The Respondents (the "Yeildings") are owners of Unit 7 in Pelican Cove.[1]

The Council's claims in this action seek permanent mandatory injunctive relief requiring the Yeildings to comply with a six-person per unit maximum occupancy limitation, located in the declaration of Pelican Cove (the "Declaration"), recorded in the chain of title to the property.[2] The Declaration at all times has included a provision, titled "Restriction on Use," which provides that:

> Each unit shall be used exclusively for residential purposes as a single-family dwelling, and each unit shall not be occupied by more than 6 persons. No unit shall be used for any business or commercial or other purposes, except that units may be leased for single-family occupancy of not more than 6 persons by the owners, any unit owner, or any unit mortgagee in possession; . . .[3]

Since the Yeildings purchased Unit 7 in 2015, a property manager hired by the Yeildings has advertised and leased Unit 7 for rent with an occupancy limit of ten people.[4]

On June 3, 2019, I issued a Memorandum Opinion resolving the parties' Cross-Motions for Summary Judgment ("*Pelican Cove I*").[5] I found that the

---

[1] *Council of Ass'n of Unit Owners of Pelican Cove Condo. v. Yeilding*, 2019 WL 2339531, at *3 (Del. Ch. June 3, 2019).
[2] *Id*. at *1.
[3] *Id*. at *2.
[4] *Id*. at *4.
[5] *Council of Ass'n of Unit Owners of Pelican Cove Condo. v. Yeilding*, 2019 WL 2339531, (Del. Ch. June 3, 2019). *Pelican Cove I* also dealt with the Yeildings' Motions for Summary Judgment against certain Third-Party Respondents, which are not pertinent here.

Yeildings' advertising and leasing of Unit 7 to groups as large as ten person was "in clear violation of the Declaration."[6] I found that the Yeildings "had, at least, constructive notice of the Declaration because it was recorded with the Recorded of Deeds in and for Sussex County."[7] Therefore, I found the Yeildings in ongoing breach of the Declaration.[8] I additionally found that none of the several defenses to enforcement of the occupancy limit proffered by the Yeildings had merit.[9]

Notwithstanding that the Council had succeeded on the merits of its claim that the Yeildings have breached the Declaration's occupancy limit, in *Pelican Cove I* I was unable to grant the Council the permanent injunctive relief sought.[10] My inability to grant the Council such relief was because the Council "made no argument demonstrating irreparable harm or the balance of the equities," which, along with actual success on the merits, are required showings to successfully obtain a permanent injunction.[11] Therefore, I found it "inappropriate" to parse the facts and make a determination on irreparable harm or the balance of the equities without

---

[6] *Id.* at *5.
[7] *Id.*
[8] *Id.* at *6.
[9] *Id.* at *8.
[10] *Id.*
[11] *Id.* (quoting *North River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369, 379 n.47 (Del. 2014)) ("To succeed in a request for a permanent injunction, a party must show (i) actual success on the merits; (ii) that it would suffer irreparable harm if the injunction is not granted; and (iii) that the balance of the equities favors it.").

3

argument on these issues from the parties, and denied the Council's request for summary judgment on the occupancy claim.[12]

The Council has made a Renewed Motion for Summary Judgment, and the parties' briefing on this Motion has addressed irreparable harm and the balance of the equities.[13] Consequently, this Letter Opinion resolves the Council's Motion for Summary Judgment on its claim seeking permanent mandatory injunctive relief requiring the Yeildings to comply with the Declaration.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[14] As of *Pelican Cove I*, the parties did not contend that material factual disputes existed, and the briefing for this Renewed Motion for Summary Judgment has not disclosed any material factual disputes.[15]

---

[12] *Id*. I also denied the Council's Motion for Summary Judgment on their nuisance claim, which is not pertinent here. *Id*.

[13] *See* Letter Mem. in Supp. of Pet'rs' Renewed Mot. for Summ. J., D.I. 80 ("Council's Opening Br."); Resp'ts. Dale and Sandra Yeilding's Resp. in Opp'n to Pet'rs' Renewed Mot. for Summ. J., D.I. 83 ("Yeildings' Opp'n Br."); Pet'rs' Reply Mem. in Supp. of Renewed Mot. for Summ. J., D.I. 84 ("Council's Reply Br.").

[14] Ch. Ct. R. 56(c).

[15] *Pelican Cove*, 2019 WL 2339531, at *4; *see id*. at *4 n.61 (explaining that while the parties take issue with certain aspects of the factual background as presented by the other parties, "many of the issues are not disputes of fact but disputes over the conclusion to be drawn from certain facts.").

4

In order to succeed on its Motion, the Council must show that it will suffer irreparable harm if injunctive relief is not granted.[16] Irreparable harm "consists of harm for which there can be no adequate recompense at law, *i.e.*, an award of compensatory damages will not suffice."[17]

This Court has addressed irreparable harm in the context of breach of a restrictive covenant in a residential community. Generally, the mere existence of breach of such a covenant implies irreparable harm. For example, in *Slaughter v. Rotan*,[18] this Court held that purchasers in a residential subdivision entered into a "social contract" that included the restrictive covenant applicable there, and that because "[o]nce a restriction is breached, the Plaintiffs can never again regain the sanctity of the covenant," breach of the restrictive covenant constituted irreparable harm.[19] In *The Cove on Herring Creek Homeowners' Association, Inc. v. Riggs*,[20] this Court enforced a restrictive covenant prohibiting sheds on certain homeowners' lots, noting that "the social contract among the residents of the [residential

---

[16] *Draper Commc'ns, Inc. v. Delaware Valley Broadcasters Ltd. P'ship*, 505 A.2d 1283, 1288 (Del. Ch. 1985).
[17] *Horizon Pers. Commc'ns, Inc. v. Sprint Corp.*, 2006 WL 2337592, at *24 (Del. Ch. Aug. 4, 2006) (internal quotation marks omitted).
[18] 1994 WL 514873 (Del. Ch. Sept. 14, 1994).
[19] *Id*. at *3.
[20] 2003 WL 1903472 (Del. Ch. Apr. 9, 2003), *aff'd sub nom. Riggs v. Cove on Herring Creek Homeowners' Ass'n, Inc.*, 832 A.2d 1252 (Del. 2003).

subdivision] as reflected in the Declaration would mean little if injunctive relief were not available to exclude the structures erected by the Defendants."[21]

Beyond the quantum of harm arising from the ongoing breach of the other unit holders' mutual rights under the Declaration, the specific allegations of harm to the Council consist, in the main, of the effect of the Yeildings' breach on the quiet enjoyment of the other units in Pelican Cove. The Council contends that the availability of Unit 7 to large rental groups may allow sometimes unruly groups to disturb those occupying the other units and notes that the larger the group rental, the more opportunity for such disruption. The record reflects some instances of such problems in the past.[22]

To my mind, the Council will continue to suffer some irreparable harm if a permanent injunction is not granted. The rationale for recognizing that a breach of a restrictive covenant in residential communities constitutes irreparable harm, evident in *Slaughter* and *The Cove*, is even stronger here. *Slaughter* involved the placement of a mobile home on the Defendants' parcel of land, *The Cove*, as noted, concerned storage sheds. In both of those cases, the real property at issue consisted

---

[21] *Id.* at *5.

[22] For example, an email from June 2019 written by the owner of Unit 2 states: "[t]here are 10 renters in unit 7 and one renter was just outside smoking from a bong doing marijuana . . . [t]he renters were outside counting how many people would be staying at the property and smoking marijuana . . . I am not able to have my daughter outside for fear of her breathing marijuana fumes . . . ." Council's Opening Br., Ex. A. The email is attached to a sworn affidavit. I note that the Yeildings have argued that an injunction would be futile, and contends that on the occasion cited, there was only one tenant of Unit 7. Yeildings' Opp'n Br., at 9–10.

6

of separate lots.[23]  In *The Cove*, Vice Chancellor Noble remarked: "[t]he harm resulting from a breach of a restrictive covenant is difficult to quantify because the effect frequently is largely aesthetic."[24]  In both of those cases, the breach of the restrictive covenant did not, on the whole, affect the other property owners' use and enjoyment of their own property, yet in both cases the Court found that the social contract had been breached and the other parties to the social contract would suffer irreparable harm without permanent injunctive relief.

The case law indicates that ongoing violation of a restrictive covenant may constitute irreparable harm, *per se.*  Here, the other unit owners of Pelican Cove, represented by the Council, will suffer irreparable harm absent injunctive relief beyond that implicated in the violation of the declaration *per se*, because here the Yeildings breach of the Declaration diminishes the other unit holders' own enjoyment of their property.  These are not private lot-owners forced to contemplate a tool shed from afar.  Instead, they are residents sharing an old motel building, with all the tight quarters that implies.  The effect of the breach of restrictive covenant here is *not* largely aesthetic.  Loss of the covenanted right inherent in the Yeildings' conduct would increase crowding of the common areas and the possibility of disruptive group rentals.  Without injunctive relief, there is nothing to stop the

---

[23] *Slaughter*, 1994 WL 514873, at *1; *The Cove*, 2003 WL 1903472, at *1.
[24] *The Cove*, 2003 WL 1903472, at *5.

occupancy of Unit 7 by more than six persons. The Defendants point out that nothing guarantees that an injunction limiting the occupancy of Unit 7 to six persons will eliminate noisy or disruptive renters altogether; however, it is reasonable to believe that the likelihood of such disruptive groups will be lessened, and their effect minimized, by enforcement of the covenant. Contrary to the Yeildings' arguments, therefore, the issuance of an injunction would not be futile. I find that the Council has made the required showing that it will suffer irreparable harm absent injunctive relief.

The Council must also show that the balance of the equities weighs in favor of issuing an injunction.[25] *Pelican Cove I* found that the Yeildings had at least constructive notice of the Declaration and, consequently, the occupancy limitation. Remedying clear violations of the Declaration will honor the reasonable expectations of the unit owners of Pelican Cove.[26] There is no evidence that the Declaration has been abandoned or unfairly enforced.[27] Failing to grant a permanent injunction here would result in the other unit owners being denied the benefits of the

---

[25] *Homsey Architects, Inc. v. Nine Ninety Nine, LLC*, 2010 WL 2476298, at *8 (Del. Ch. June 14, 2010); *Draper Commc'ns, Inc. v. Delaware Valley Broadcasters Ltd. P'ship*, 505 A.2d 1283, 1288 (Del. Ch. 1985) ("the harm that would result if an injunction does not issue outweighs the harm that would befall the opposing party if the injunction is issued.").

[26] *See Jackson's Ridge Homeowners Ass'n v. May*, 2007 WL 4179310, at *7 (Del. Ch. Nov. 20, 2007).

[27] *Id*.

social contract.[28] While the Yeildings may suffer economic consequences because they are unable to rent to groups larger than six, I "cannot accord it any weight" because to do so "would create a perverse economic incentive by benefiting those homeowners who breach the social contract at the expense of those who abide by the rules."[29] Therefore, the balance of the equities is in favor of granting the Council the permanent injunction it seeks.

In *Pelican Cove I*, the Council succeeded on the merits demonstrating that the Yeildings were in breach of the Declaration. I have found here that the Council and the unit holders it represents will suffer irreparable harm absent an injunction and that the balance of the equities weighs in favor of issuing an injunction. Accordingly, a permanent injunction should issue.

The parties should submit a form of order consistent with this Letter Opinion.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[28] *Grand Oaks Maint. Corp. v. Acocella*, 2008 WL 4484826, at *3 (Del. Ch. Sept. 26, 2008) (citing *id*.).
[29] *Id*.

9